[Civil No. 3812. Filed July 6, 1937.]

[69 Pac. (2d) 1032.]

EARL PLATT, Appellant, v. A. HARTLEY GREEN-
WOOD and THE UNITED STATES FIDELITY
AND GUARANTY COMPANY, a Corporation,
Appellees.

Mr. Earl Platt, Appellant, *in pro. per.,* and Mr. Stanley Jerman, for Appellant.

Mr. Dodd L. Greer and Mr. Gilbert E. Greer, for Appellees.

ROSS, J.—This is an action for damages for unlawful arrest and false imprisonment. A. Hartley Greenwood, sheriff of Apache county, on September 23, 1935, between 6:30 and 7:00 o'clock in the evening, without a warrant, arrested the plaintiff, Earl Platt, on the streets of St. Johns and took him to and locked him in the county jail, where he remained for some three hours, when he was released by the sheriff without any charge being laid against him. The United

States Fidelity & Guaranty Company is the sheriff's official bondsman.

The defense is that plaintiff was, at the time he arrested him, interfering with the sheriff in an attempt to arrest one Spencer Nordyke, who was committing, or attempting to commit, a public offense.

The case was tried to a jury and resulted in a verdict and judgment for defendants. The plaintiff has appealed assigning several grounds therefor.

■ The facts, stated most strongly against the plaintiff and in favor of defendants, are as follows: Tom Davis, the proprietor of a public place in St. Johns, known as the Apache Café, where both intoxicating liquors and food were served, called the defendant sheriff over the telephone, stating that there was some difficulty or trouble in the café. When the sheriff arrived at the café, he found that one Spencer Balcomb and Spencer Nordyke were under the influence of intoxicating liquors and had been quarreling and threatening to fight each other. It seems that the sheriff and others were able to induce Balcomb to leave the café and to go to his country home some miles away. Nordyke, although requested by the sheriff to get off the streets and go home, refused or neglected to do so. Someone telephoned plaintiff, who was an acquaintance of Nordyke's and an old-time friend, that the latter was having some trouble, whereupon he went from his home to the Apache Café to look after Nordyke. At the time the defendant arrested the plaintiff the latter and Nordyke were standing on the street, between the Apache Café and the Jones restaurant and pool hall, and the defendant, who was motoring along the street, saw them. He stopped and went to where plaintiff and Nordyke were for the purpose of arresting Nordyke, he says. When asked why he was intending to arrest Nordyke, he said:

"He was drunk and was disturbing the peace talking loudly and had caused this trouble in the Apache Café just prior to this time."

He added that he was talking loud enough so that passers-by could hear him. When he reached plaintiff and Nordyke, according to his statement he did this:

"As I walked up to them I got hold of Nordyke's coat collar, and told him that I had given him several chances to go home and get off the street, that you are drunk and that I did not want any more trouble and that it was about time that I was doing something."

Plaintiff protested the arrest of Nordyke, insisted that he was doing no wrong nor anything for which he should be arrested, and told defendant that he would look after him and take care of him. Plaintiff did not use any physical force but, as defendant said,

"he just kept on arguing and getting between me and my man that I was after. . . . Just talking and interfering."

According to the defendant, the reason he arrested the plaintiff was because he kept arguing with him and getting between him and Nordyke; that he got angry and arrested him.

The witnesses speak of what was said between the defendant and plaintiff as "arguing." Just what the language was does not appear. It is quite clear, however, that the plaintiff did not use or threaten to use any physical force to prevent the defendant from taking Nordyke into his custody.

St. Johns is an unincorporated town and therefore if Nordyke was committing, or attempting to commit, any public offense, when defendant went where he and plaintiff were, it was an offense against some state law and not against any city or town ordinance. That Nordyke was intoxicated seems quite certain, and that

he had earlier in the evening in the Apache Café, but not in the presence of the defendant, been guilty of disturbing the peace is not disputed.

The legislature has not made intoxication or the failure or refusal of one intoxicated to keep off the street or to obey the orders of the sheriff or peace officer to go home a public offense. The right of the sheriff to arrest the plaintiff without a warrant depended upon whether what the plaintiff did and said when the sheriff approached him and Nordyke constitute the crime of obstructing the sheriff in the discharge of, or attempt to discharge, *a duty* of his office. Section 4559, Revised Code of 1928, provides that one who wilfully resists, delays, or obstructs an officer in the discharge of a duty of his office is guilty of a felony.

■ This involves an inquiry as to what duty of his office the defendant was discharging, or attempting to discharge, at the time of the alleged obstruction. He says he was intending to arrest Nordyke, but he had no warrant for Nordyke and he had no right and was under no legal duty to arrest him unless he knew, or had reason to know, he had committed a felony; or unless in his presence Nordyke was committing, or attempting to commit, some public offense. *Adair* v. *Williams,* 24 Ariz. 422, 210 Pac. 853, 26 A. L. R. 278. There is no suggestion that Nordyke had committed a felony. If he was guilty of anything for which an officer could lawfully arrest him without a warrant, it was disturbing the peace in the presence of the officer. It is true that the defendant states that Nordyke was drunk and disturbing the peace, and that he was talking loud enough to be heard by passers-by.

■ This offense occurs where a person maliciously and wilfully disturbs the peace or quiet of any neighborhood, family, or person by loud or unusual noise,

or by tumultuous or offensive conduct, or by threatening, traducing, quarreling, challenging to fight or fighting, or who applies any violent, abusive, or obscene epithets to another. Section 4722, Id.; *People* v. *Anderson,* 117 Cal. App. (Supp.) 763, 1 Pac. (2d) 64.

When defendant approached plaintiff and Nordyke, the latter two were engaged in a private conversation. There is no evidence that Nordyke was using anything but the usual conversational tone of voice and language. Defendant says, speaking of the time he went to where plaintiff and Nordyke were:

"I believe that Earl (plaintiff) and Nordyke was talking about *this case,* but Nordyke was doing most of the talking. . . . I heard Nordyke say, 'if I make a charge against him, Tom Davis (café proprietor) will swear against me and Dodd Greer (county attorney) and Hartley Greenwood will because they are afraid of him.' " (Italics ours).

"This case" no doubt refers to the trouble in the café before defendant arrived.

It is true, defendant says Nordyke was talking loudly so that passers-by could hear him. Surely the conversation the defendant heard in the neighborhood of the Apache Café and the Jones restaurant and pool hall, though it may have been somewhat loud, would have no tendency to disturb the peace or quiet of that neighborhood or any family or person. The fact is, there is no evidence that there was any family living in that immediate neighborhood, or that the conversation, though loud, was unusual.

It seems probable that plaintiff and Nordyke were doing nothing but conversing in an ordinary tone of voice when defendant went to them to arrest Nordyke. With the defendant in the automobile when he stopped near the two was Deputy Sheriff Joel Mineer. Mineer

testified they stopped the car within twenty-five feet of plaintiff and Nordyke and that he did not hear any of their conversation, adding, it is true, that "the window was up." It appears that the conversation grew loud only after the defendant "got hold of Nordyke's coat collar," and even then, according to Mineer they were not talking in an unusual tone of voice but were "talking quite loud."

The statement by the defendant that Nordyke was disturbing the peace, in view of the evidence, must be regarded as his conclusion, unless he was referring to the earlier disturbance in the Apache Café which took place in his absence and for which he had no right to arrest Nordyke except upon a warrant.

 When an officer undertakes to arrest a person for a minor offense of the grade of a misdemeanor without a warrant, the person must be in the act of committing the offense, or attempting to commit it, to justify such arrest. The fact that the party may have theretofore committed such an offense will not justify the officer in arresting him without a warrant.

 Since there is no evidence that Nordyke, at the time the defendant says he intended to arrest him, was committing, or attempting to commit, any offense against the laws of the state, the defendant would have exceeded his authority had he arrested him. If that was his purpose and intent, when he went to where plaintiff and Nordyke were standing, what the plaintiff said and did to cause him to desist from doing what would have been an illegal act was not an obstruction or resistance of or a delaying of the defendant in the performance of a duty of his office.

*"Person Resisted Must Be Performing Official Duty.* To constitute this offense, it must appear that the officer at the time of the resistance or obstruction was actually performing a duty pertaining to his office, and

an act which may, in its remote consequences only, prevent the officer from performing his official duty does not constitute the offense. If he was attempting to perform a duty not enjoined by law upon him and peculiar to his office, or was acting in the given case without the necessary legal process or authority, as, for instance, where he makes an unlawful arrest, or search and seizure, one who opposes him therein is not guilty of the offense. . . . '' 46 C. J. 874, § 19.

■■ Counsel for defendant in his opening statement to the jury of his defense said:

"I am going to briefly outline our defense . . . we will now attempt to prove that this time in question, on the 23rd day of September, 1935, that . . . Spencer Nordyke had been engaged in a fight in the Apache Café, and was drunk and making a disturbance and was asked to leave the café. That the sheriff was called there,"

and that when he arrived he asked Nordyke more than twice to go home and get off the street; that while Nordyke and Platt were talking and saying what they were going to do about it, defendant got out of his car and went over where they were; that as he approached them, Nordyke told the sheriff plaintiff was his attorney. Thus there is no suggestion in the statement that Nordyke was at the time committing, or attempting to commit, any disturbance of the peace or any other offense. There was a great deal of testimony concerning the trouble in the café before the sheriff appeared which showed, or tended to show, that Nordyke had theretofore breached the peace. The admission of such testimony is assigned as error, but, since there was no proper objection to its admission interposed, we cannot consider such assignment, although it is quite plain that it was not competent for the purpose of showing that Nordyke was committing, or attempt-

ing to commit, a crime at the time the sheriff undertook to arrest him.

At the close of the case there was no material controverted question of fact. It appeared that if Nordyke had committed, or attempted to commit, any public offense it was not in the presence of the defendant but before defendant came on the scene; that defendant had no warrant for Nordyke and that when he attempted to arrest him, Nordyke was not committing, or attempting to commit, any public offense; and that all plaintiff was doing when defendant arrested him was trying to argue defendant out of arresting Nordyke and into letting plaintiff take care of him. In view of this situation, when at the close of the whole case plaintiff moved for an instructed verdict in his favor, it seems to us the court erred in not granting the motion, except as to the issue of damages.

It may be admitted that an intoxicated person on the public streets or on the highways of the state is a potential danger to himself as well as others, and that it is quite commendable in the peace officers of the state to try to remove such danger, especially when the intoxicated person is unattended by any friend or relative looking out for him. Nordyke was at the time being looked after by the plaintiff, who, the evidence shows, was not intoxicated nor had he been drinking. So, the necessity at the time for the active interest of the sheriff in Nordyke was not apparent. It is quite certain that if the defendant had not lost his temper he would not have gone to the extreme of arresting and throwing plaintiff in jail. The law is very jealous of the liberty of the individual, and while peace officers in the discharge of their duties must not be obstructed or interfered with, they may not lawfully deprive a citizen of his liberty except in the manner provided by law.

We think the justice of the case requires that it be sent back for a new trial in accordance with the principles herein stated, and it is so ordered.

McALISTER, C. J., and LOCKWOOD, J., concur.