CITY OF SOUTH EUCLID *v.* NOVY.

(No. 7017—Decided January 28, 1966.)

Mr. *Paul Mancino, Jr.*, city prosecutor, for plaintiff.
Mr. *Roland Baskin*, for defendant.

Klein, J. On February 13, 1965, an affidavit which reads in part as follows was filed in this court:

"* * * Thomas Sterkel, who being duly sworn according law, deposes and says, that on or about the 4th, 5th, and 13th days of June, 1964, and continuing thereafter until June 22, 1964, at the city of South Euclid, Cuyahoga County, Ohio, one Charles Novy, 1772 Maywood Road, South Euclid, Ohio, did disturb the peace and good order of the city of South Euclid, Ohio, by using obscene, profane and scandalous language; that all of said acts were in violation of Section 527.03 of the Codified Ordinances of the city of South Euclid, Ohio, and against the peace and dignity of the city of South Euclid, Ohio, in violation of law, * * *"

The defendant, Charles Novy, and his wife live at 1772 Maywood Road, South Euclid, Ohio. The affiant, Thomas A. Sterkel, and his family live next door to the defendant's residence.

Briefly summarized, the pertinent portion of the testimony elicited at the hearing in this case was as follows:

1. Mrs. Sterkel testified that on June 4, 1964, the defendant yelled and shouted at her in a loud, angry voice that she should keep her children off the sidewalk since they were cracking it with their high heels and plastic go-carts; that on another occasion, the defendant yelled at her that "Catholics are worse than niggers"; that on still another occasion, he shouted at her daughter in a loud, angry voice that she was a "liar" and that

she should "shut her mouth and go into the house"; and that on numerous and various other occasions, the defendant had spit at her (Mrs. Sterkel) and her children.

2. Affiant, Thomas Sterkel, testified that on June 13, 1964, the defendant spit at him and yelled "Who in the hell do you think you are—the Pope or someone?"

3. Mrs. Margaret Zelina (a resident of Maywood Road living several houses from the Novy residence) testified that she had heard the defendant yelling at the Sterkel children.

4. The defendant's wife testified that she never saw her husband spit at any of the Sterkels; that her husband doesn't use profane language; that she never heard him make any of the hereinbefore set forth remarks which the Sterkels claim he made; and that Mr. Sterkel had, in fact, yelled at Mr. Novy on several occasions.

5. The defendant testified that he never yelled at the Sterkels; he denied ever having made the hereinbefore set forth remarks which the Sterkels claimed he had made; and he further testified that Mr. Sterkel had yelled at him on several occasions.

At the close of the city's case, the defendant moved for a dismissal[1] on the ground that the evidence presented by the City failed to disclose a breach of the peace, it being the contention of the defendant that City Ordinance 527.03 requires proof of a breach of the peace and "* * * that a quarrel with another, or the commission of any of the other things enumerated in the Ordinance *unaccompanied by a disturbance of the public.* * * *," (emphasis added) does not constitute a breach of the peace. In support of his motion, the defendant cited the following cases: *Fischbach* v. *Ohio State Racing Commission*, 76 Ohio Law Abs. 540; *City of Cleveland* v. *Lavelle*, 51 Weekly L. Bull. 310; and *State* v. *Rothschild*, 78 Ohio Law Abs. 292. In his post hearing brief, the defendant stated that since the language of City Ordinance 527.03 is similar to Section 715.55, Revised Code, the following cases decided under Section 715.55, Revised Code, throw light on the proper construction of the South Euclid Ordinance: *In re Fitzsimmons* (1912), 13 O. N. P. (N. S.) 104; *Hughes* v. *Cincinnati* (1913), 14 O. N. P. (N. S.)

---

[1]The court reserved ruling on this motion pending receipt of briefs.

494; *Jefferies* v. *City of Defiance* (1891), 11 Dec. Repr. 144; 25 Weekly L. Bull. 68.

## The Law

Section 715.55, Revised Code, reads in part as follows:

"Any municipal corporation may provide for: (A) The punishment of persons disturbing the good order and quiet of the municipal corporation by clamors and noises in the night season, by intoxication, drunkenness, fighting, committing assault, assault and battery, using obscene or profane language in the streets and other public places to the annoyance of the citizens, or otherwise violating the public peace by indecent and disorderly conduct or by lewd and lascivious behavior."

Ordinance 527.03 of the city of South Euclid, Ohio, reads in part as follows:

"It shall be unlawful for any person to disturb the peace and good order of the City by fighting, quarreling, wrangling, threatening violence to the person or property of others, or by riot, tumult, lascivious, obscene, profane, or scandalous language, or by making outcries, clamor, or noise in the night, or by intoxication, drunkenness, * * *."

## Finding of Fact

A careful analysis of the demeanor of the various witnesses, their manner of testifying, the reasonableness of their testimony, their candor, or lack of candor, their interest and bias, together with all the other facts and circumstances surrounding their testimony, compel the conclusion that the defendant made the statements attributed to him by Mr. and Mrs. Sterkel.

## Discussion

I. Power of city of South Euclid to enact City Ordinance 527.03.

City Ordinance 527.03 is a local police regulation within the meaning of Section 3 of Article XVIII of the Constitution of the state of Ohio.[2] Since the problem with which this ordinance deals is clearly within the scope of the police powers of the city of South Euclid, any difference between the language

---

[2]Section 3 of Article XVIII reads as follows: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

and scope of these two sections (City Ordinance 527.03 and Section 715.55, Revised Code), is without any legal consequence or signifiance.[3]

II. DEFENDANT DISTURBED THE PEACE AND GOOD ORDER OF THE CITY OF SOUTH EUCLID BY WRANGLING AND BY USING PROFANE AND SCANDALOUS LANGUAGE.[4]

Defendant directed the following remarks at various members of the Sterkel family:

(1) "Who the hell do you think you are—the Pope or someone?" (2) "Liar—shut your mouth." (3) "Catholics are worse than niggers."

Since the above and other remarks were made by the defendant in a "loud, angry" voice, he was "wrangling" within the ordinary and usual meaning of the word; the word "hell" is generally deemed to be a profane word; calling another person a "liar" is scandalous language; and since "nigger" is a very derogatory reference to a member of the Negro race, stating that members of a religious faith are worse than "niggers" also constitutes "scandalous" language. Thus, it is clear that the defendant "wrangled" and used "profane" and "scandalous" language on the occasions set forth in the affidavit.

The defendant has claimed that, even if the court should believe the Sterkels' testimony, a disturbance of the peace and good order of the city of South Euclid was still not established since the prosecutor failed to present any evidence that the

---

[3]Prior to the adoption of Section 3 of Article XVIII in 1912, municipal power to enact local police regulations was derived from legislative authority. Since 1912, a municipality has derived its power directly from the Ohio Constitution. In *Akron* v. *Criner* (1960), 112 Ohio App. 191, the Court of Appeals of Summit County, Ohio, stated that division (A) of Section 715.55, Revised Code, is now useless legislation.

[4]The following definitions are set forth in Webster's New Collegiate Dictionary:

Wrangle—"1. To dispute angrily; to brawl. 2. To argue; dispute * * * n. Angry dispute; a noisy quarrel. * * *"

Profane—"1. To violate or treat with irreverence, obloquy, or contempt (something regarded as sacred); to desecrate.

"2. To debase by a wrong, unworthy, or vulgar use * * *."

Profanity—"* * * cursing * * *"

Scandalous—"1. Giving scandal; scandalizing; also bringing shame or infamy; as, scandalous actions.

"2. Defamatory: libelous; * * *"

"public" was disturbed by defendant's conduct. The courts of this country, however, have held that a breach of the peace can occur without the "public" repose being disturbed. "Disturbing the peace" was defined as follows by the Supreme Court of Louisiana in *Town of Ponchatoula* v. *Bates* (1931), 173 La., 824, 138 So. 851:

"A disturbance of the peace may be created by any act or conduct of a person *which molests the inhabitants in the enjoyment of that peace and quiet to which they are entitled,* or which throws into confusion things settled, *or which causes excitement, unrest, disquietude, or fear.*" (Emphasis added.)

The Supreme Court of Arizona defined "Disturbing the peace" as follows in *Platt* v. *Greenwood* (1937), 69 P. 2d 1032:

"This offense (disturbing the peace) occurs where a person maliciously and willfully *disturbs* the peace or quiet of any neighborhood, *family, or person by loud or unusual noise, or by tumultuous or offensive conduct, or by* threatening, traducing, *quarreling,* challenging to fight, or fighting, *or who applies any* violent, *abusive, or obscene epithets to another. * * *.*" (Emphasis added.)

The defendant's conduct is clearly encompassed by the above definitions of disturbing the peace. Although there was evidence that the defendant's "loud, angry" words were heard by at least one neighbor (Zelina), such a showing is not a requisite of either of the above definitions of disturbing the peace. Furthermore, defendant's remarks were made in a "loud, angry" voice in a residential area of the city. This street, and the surrounding area, consists of homes on city lots of ordinary size (approximately 45′ to 55′ fronts). If one shouts in a loud and angry voice where homes are in such close proximity to each other, it is quite probable that a number of persons in the neighborhood will be disturbed. In any event, it is clear that various members of the Sterkel family were simultaneously present when a number of the episodes described at the trial occurred. In *State* v. *Protopapas* (1962), 23 Conn. Supp. 471, 184 A. 2d 558, an appellate court of Connecticut stated as follows:

"It is not the law that there is no breach of the peace unless the public repose is disturbed."

Although the defendant's counsel has done yeoman's serv-

ice for his client in presenting authorities and arguments to support his contention that one cannot disturb the peace and good order of a city unless the evidence establishes that the "public," or at least a segment thereof, is disturbed; the court cannot adopt the legal contention advocated by the defendant. The hereinabove quoted language from the decisions of the Connecticut appellate court and the Supreme Courts of Arizona and Louisiana make it abundantly clear that one can disturb the peace by conduct directed at one or several individuals. With respect to this point, it is very important to note that Section 715.55, Revised Code, provides for punishing persons who disturb the peace by using obscene or profane language "* * * in the streets and other public places to the annoyance of the citizens," whereas, City Ordinance 527.03 does *not* contain this qualifying language, to wit: "* * * in the streets or other public places to the annoyance of the citizens * * *"; also, City Ordinance 527.03 provides that "arguing" or "wrangling" constitutes a violation thereof, whereas, arguing or wrangling is not specified as a violation of Section 715.55, Revised Code. Therefore, it is clear that the scope of Section 715.55, Revised Code, is much narrower in these two respects than is City Ordinance 527.03.

III. CASES CITED BY DEFENDANT ARE DISTINGUISHABLE.

In concluding, it should be pointed out that the court has carefully analyzed all the cases cited by the defendant and finds that they are all clearly distinguishable from the instant situation for the reasons set forth below:

A. *Fischbach* v. *Ohio State Racing Commission,* 76 Ohio Law Abs. 540, *supra.*

The defendant in this case was fined and his racing privileges suspended by the Ohio Racing Commission for violating the following racing rules:

Rule 54: "If any licensed person * * * disturbs the peace of any race track enclosure * * * he may be * * * fined, suspended, * * *."

Rule 84: "The Stewards have the power to fine * * * suspend * * * any person for disorderly conduct or breach of the peace or for violations of the Rules of Racing * * *."

In its decision, the court emphasized that the hereinabove set forth rules "* * * do not define the offense of disturbing the

peace * * *." The court then quotes the following language from 11 Corpus Juris Secundum, Section 3, Breach of the Peace: "* * * insulting language does not constitute a breach of the peace *unless the statute so provides*" (emphasis added). City Ordinance 527.03 specifically refers to "wrangling" and to "using obscene, profane and scandalous language" as a means of disturbing the peace. Therefore, it is clear that the instant situation and the *Fischbach case* are clearly distinguishable on their facts.

B. *State* v. *Rothschild*, 78 Ohio Law Abs. 292, *supra*.

This was a case involving a conviction for the exhibition of a movie advocating that nudism is desirable. The court upheld the conviction on appeal.

C. Other cases.

The gravaman of *In re Fitzsimmons, supra*; *Hughes* v. *Cincinnati, supra*; *Jefferies* v. *Defiance, supra*; and *Cleveland* v. *Lavelle, supra*, was that a city ordinance which does not follow Section 715.55, Revised Code,[5] is invalid. However, the adoption of Section 3 of Article XVIII of the Ohio Constitution makes the rulings in all four of these cases obsolete.

For the reasons hereinabove set forth, defendant's motion to dismiss is overruled and the court finds that the defendant is guilty of the offense charged.

*Judgment accordingly.*

---

[5]Formerly Section 2108, Revised Statutes; and Section 3664, General Code.