**CITY OF BISMARCK, Plaintiff and Respondent,**

v.

**Alvin TRAVIS, Defendant and Appellant.**

**Crim. No. 344.**

Supreme Court of North Dakota.

Nov. 2, 1967.

Rehearing Denied Jan. 11, 1968.

Frederick E. Saefke, Jr., Bismarck, for plaintiff and respondent.

Rausch & Chapman, Bismarck, for defendant and appellant.

STRUTZ, Judge (on reassignment).

The defendant was charged with the offense of disorderly conduct under an ordinance of the City of Bismarck. He was convicted in police magistrate's court, and took an appeal from the judgment of con-

viction to the district court where he again was found guilty, by a jury, of the offense charged. The defendant thereupon appealed to this court from the judgment of conviction entered on the verdict and from an order denying his motion for a new trial.

The facts are not in serious dispute, but the defendant contends that such facts clearly show that he is not guilty. Those facts, briefly stated, are:

The complaining witness was employed as a telephone operator. On the evening of November 13, 1964, she had worked until 11 p. m., and after completing her day's duties she, with two girl friends, went to the place of her residence where she awaited an expected long-distance telephone call. The three of them then went to the Drumstick restaurant for a snack and then decided that they would take a short ride before calling it a day. With the complaining witness doing the driving, they drove down Main Avenue of Bismarck in an easterly direction. At Twenty-sixth Street, they made a left turn to the north, intending to make another left turn at the intersection of Twenty-sixth Street and Broadway Avenue in order to take one of the girls to her place of residence on Second Street. When the complaining witness attempted to turn left, or west, on Broadway Avenue, she was prevented from doing so by another automobile which had been driven alongside her car in the intersection and which thus prevented her from making the left turn. She thereupon continued driving north on Twenty-sixth Street to the next intersection, with Thayer Avenue, where she again attempted to turn left, or west. Again she was prevented from doing so by the same automobile. She then proceeded north on Twenty-sixth Street for still another block, to Rosser Avenue, where the same thing happened. The complaining witness then continued north for another block, to Avenue A, where she made a right turn in an easterly direction toward Twenty-seventh Street.

After turning toward the east, the car which had been following her and preventing her from making the left turns toward Second Street passed her automobile and was then driven in such a way as to prevent her from making a left turn onto Twenty-seventh Street. This car then completely blocked her progress and she attempted to back up in order to get away from it. The offending car then was turned around so that its headlights shone on the complaining witness's automobile. She continued backing away and finally struck the curb, whereupon the other car completely blocked her path, making it impossible for her to move in any direction.

The defendant, who was not the operator of the other automobile, thereupon got out of the car and approached the complaining witness's automobile and stared into the window on the driver's side. The complaining witness contends that this greatly frightened her. The girls had rolled up the windows of their automobile and locked the doors. The radio was on so that it was impossible for them to hear what the defendant was saying.

After standing at the door on the driver's side of the automobile for some five minutes, according to the estimate of the complaining witness, the defendant went around to the right side of the car and knocked on that window. The girls paid no attention to him, however, and refused to open the door. After staying on the right side of the car for another estimated five minutes, the defendant returned to the car in which he had been riding, got into it, and the car then was driven away. The girls thereupon drove to the police station, where the complaining witness made her complaint against the defendant, who had been recognized by one of the girls in the car.

By the time the case came on for trial, the girls other than the complaining witness had left Bismarck. The driver of the car in which the defendant had been riding also had left the community, shortly

after the above incident, and therefore he was not arrested.

The defendant testified that he had been requested by the driver of the car in which he was riding to tell the girls that the driver thought he knew one of them and that he wanted to talk to her. The defendant contended that he stood at the driver's side of the girl's car for a far shorter period of time than claimed by the complaining witness, and that, failing to get a response from her, he had moved over to the right side of the car and knocked on the window. When he got no response from the girls there, either, and when the girls continued to refuse to talk to him, the defendant returned to the automobile in which he had been riding and it was driven away. The defendant again contended that the time during which he had been on the right side of the complaining witness's automobile was far less than the five minutes which she estimated that he had spent there.

Some time after the jury had begun to deliberate, it sent a note to the trial judge asking if it could bring in a verdict of guilty with a recommendation for clemency, "because no disturbance of the peace arose out of the incident as charged." Following receipt of this note, the trial court advised the defendant and his attorney that it was the court's intention to have the jury return into court and inform it that the subject of punishment was not to be discussed or even considered by it, since that was a matter for the court to determine; that the sole question for the jury to consider was the guilt or innocence of the defendant. The defendant objected to this, contending that the contents of the jury's note indicated that the jurors did not understand the instructions which had been given to them.

The defendant's appeal to this court is based on the ground that no breach of the peace occurred, and therefore the defendant could not be found guilty of disorderly conduct. Defendant further contends that the jury's note clearly indicated that it mis-

understood the law and that the note, stating that no disturbance of the peace arose out of the incident charged, constituted a finding on the part of the jury that there was no disturbance of the peace and thus the defendant could not be guilty of disorderly conduct. The defendant further contends that the jury should have been instructed by the trial court that if it found no disturbance of the peace, its verdict should be "not guilty."

The ordinance which the defendant is charged with having violated, insofar as it is applicable to this case, reads:

> "10. *Disorderly Conduct.* Any person who provokes a breach of the peace, or whereby a breach of the peace may be occasioned, commits any of the following acts shall be deemed to have committed the offense of disorderly conduct:
>
> \* \* \* \* \* \*
>
> (b) Acts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others." Sec. 22.0201, City of Bismarck Revised Ordinances of 1958.

The criminal complaint, insofar as it describes the offense, recites that,

> " \* \* \* on the 14th day of November, A.D.1964, at the City of Bismarck, in said County, the above named defendant did commit the offense of Disorderly Conduct within the limits of the said City of Bismarck, as follows, to-wit: That at the said time and place the said defendant did wilfully and unlawfully act in such a manner as to annoy, disturb, and interfere with another whereby a breach of the peace might have been occasioned contrary to the City Ordinances of the said City of Bismarck, \* \* \* "

The defendant in his motion for a new trial alleges two specifications of error, as follows:

> "1. The Court misdirected the jurors on a matter of law regarding a Note sent to the Court requesting further instructions and over the Defendant's ex-

ceptions and objections as shown in the record.

"2. The verdict is contrary to law and clearly against the evidence produced and against the jurors' own findings as clearly stated in the Note. The jury legally found the Defendant innocent but were so misled and misdirected by the court's instructions that they were thus prejudiced against the Defendant."

We first will consider the specification of error contending that the court misdirected the jurors in its reply to the jury's request for further instructions. In the note sent to the trial court, the jury inquired whether it could bring in a verdict of guilty with a recommendation for clemency because no disturbance of the peace arose out of the incident. The court thereupon submitted to the attorney for the defendant and the defendant the proposed statement which it intended to give to the jury. The defendant's attorney took exception to the statement, contending that the note sent out by the jury indicated that the jurors misunderstood all of the instructions and that they had legally decided that the defendant was not guilty, although they did not realize it because they had decided no disturbance of the peace had occurred.

When the court returned the jury into open court, it read to them the following statement:

"In arriving at the verdict in this case or any criminal case, the subject of punishment is not to be discussed or considered by the jury as that matter is one that lies solely with the Court and the question of punishment must not in any way affect your decision as to the innocence or guilt of the defendant. In other words, you will now consider this instruction together with all of the other instructions that were delivered earlier in the afternoon. That is all the information I can give you on it, so you will now go back to your jury room."

The defendant does not contend that the law as given by the court was incorrect insofar as it related to the subject of punishment not being within the province of the jury. But the defendant argues that this instruction was not sufficient to answer the jury's inquiry. The defendant contends that the effect of the court's charge, after receiving the note of inquiry from the jury, constituted an instruction to the jury that it could bring in a verdict of guilty when no disturbance of the peace arose out of the incident, but that it could not make a recommendation for clemency. This, the defendant contends, was error prejudicial to the rights of the defendant in view of the law of the case established by the court's instructions.

The court, in this additional statement, correctly stated the law on the subject of punishment and directed that it was not to be discussed or considered by the jury since that was a matter wholly within the province of the court. In addition thereto, the court stated that the jury should then consider the latest instruction together with all of the other instructions that had been delivered earlier.

■ We are of the opinion that the additional instruction given by the court, together with the instructions which had been given to the jury when the case was submitted to it, adequately and fully covered the inquiry of the jury and that there was no misdirection by the court on the law. We find no error here.

We next consider the defendant's specification of error that the verdict is contrary to the law and clearly against the evidence.

■ The city ordinance clearly provides that any person who provokes a breach of the peace, "or whereby a breach of the peace may be occasioned," commits the offense of disorderly conduct if such person acts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others. Clearly, the conduct of

the persons in the automobile in which the defendant was riding, by preventing the complaining witness from driving her automobile on the public streets as she desired, and in finally forcing her to the curb and blocking her movement completely, was conduct which annoyed, disturbed, interfered with, obstructed, or was offensive to the persons so being harassed. Under the instruction as given by the trial court, the jury must have found that a breach of the peace had been provoked by the defendant's conduct, although we do not believe a breach of the peace was essential under the ordinance. Thus, if the conduct of the defendant was such that it annoyed, disturbed, interfered with, obstructed, or was offensive to others, it was disorderly conduct. "Others," as used in the ordinance, is held to mean anyone other than the person who commits the act.

 Under a statute which provided that, "Every person who engages in brawling or fighting, shall be guilty of disorderly conduct, * * *" the Minnesota Supreme Court has held that the defendant was guilty even though his acts disturbed the peace of only one person. State v. Reynolds, 243 Minn. 196, 66 N.W.2d 886. So we hold that any person who provokes a breach of the peace or whose conduct is such as to annoy, disturb, interfere with, obstruct, or be offensive to others to a degree whereby a breach of the peace may be occasioned, is guilty of disorderly conduct even though such conduct is offensive to only one person. In this case, under the instructions given, the jury found that a breach of the peace had been provoked by defendant's conduct.

 The evidence in this case establishes that the conduct of the defendant annoyed, interfered with, or was offensive to "others," as herein defined. He approached the automobile of the complaining witness after it had been deliberately blocked on the public streets by the car in which he was riding; he stared into the window at the complaining witness for a considerable

length of time, which greatly frightened her; and he then went to the other side of the car and knocked on the window. It is our view that the jury could reasonably have found that what the defendant did in approaching the car, and in standing at the driver's window for a long period of time and then moving to the other side of the car and staring into and knocking upon the window, all this following the blocking of the complaining witness's vehicle by the vehicle in which he was a passenger, constituted the culmination of a series of annoyances which, together, amounted to disorderly conduct.

The judgment of conviction and the order denying the motion for new trial are affirmed.

ERICKSTAD and PAULSON, JJ., concur.

KNUDSON, Judge (dissenting)

I dissent to that part of the opinion of the majority holding that the evidence was sufficient to support the verdict of conviction.

There is no evidence in the record to prove that the acts of the defendant, separately or in association with the driver of the car, were in violation of the ordinance under which the defendant was charged.

To find the defendant guilty of disorderly conduct under the ordinance it is necessary that the acts that disturb, interfere with, obstruct, or are offensive to others, be committed to provoke a breach of the peace, or whereby a breach of the peace may be occasioned. It is quite probable that the acts of the defendant on the occasion mentioned did "annoy, disturb, interfere with, obstruct or be offensive to" the complainant. But guilt should not be made dependent upon the complainant's reactions to defendant's acts, but rather on the objective nature of the conduct and the reactions among persons of ordinary, normal temperament. See City of Bismarck v. Anderson,

N.D., 71 N.W.2d 457; People v. Harvey, 307 N.Y. 588, 123 N.E.2d 81; 12 Am.Jur. 2d Breach of Peace § 38. Here there is no showing that anyone other than complainant was annoyed or disturbed. There is, in fact, testimony indicating that the other two girls were laughing. The conduct complained of as constituting the offense of disorderly conduct was that of preventing the plaintiff from making a left turn at several intersections and finally blocking the way, forcing her to stop, by the driver of the car in which the defendant was a passenger, and was that of the defendant then getting out of the automobile and standing by the complainant's automobile.

Breach of the peace consists of acts that involve tumultuous or offensive conduct.

> This offense [disturbance of the peace] occurs where a person maliciously and wilfully disturbs the peace or quiet of any neighborhood, family, or person by loud or unusual noise, or by tumultuous or offensive conduct, or by threatening, traducing, quarreling, challenging to fight or fighting, or who applies any violent, abusive, or obscene epithets to another.

Platt v. Greenwood, 50 Ariz. 158, 69 P.2d 1032.

The instructions of the court in defining the term "breach of the peace" set out as one of the elements thereof that the act must be tumultuous or offensive. The court instructed the jury on the element of breach of the peace in the following manner:

> Conduct is disorderly, in the ordinary sense, when it is of such a nature as to affect the peace and quiet of persons who may witness it and who may be disturbed or provoked to resentment thereby; the probable and natural consequences of the conduct is the important element.

> In order to convict the defendant, the City must prove, beyond a reasonable doubt that a breach of the peace occurred as set out in the City Ordinance.

The term "breach of the peace" embraces an endless variety of acts and incidents, and anything that amounts to tumultuous and offensive conduct is a breach of the peace under the ordinance.

Disorderly conduct is a statutory offense; it was not known at common law.

> Disorderly conduct is made an offense only by statute or ordinance. At common law there was no offense known as "disorderly conduct" * * *. The term "disorderly conduct" is now commonly used, however, sometimes in statutes, but more often in municipal ordinances, to designate certain minor offenses, below the grade of misdemeanor, which are quasi-criminal in nature, but not strictly criminal. The offense has been held to be a summary proceeding, in derogation of the common law, and it may be punishable in a summary manner.

27 C.J.S. Disorderly Conduct § 1(1) (1959).

The State of New York has a statute very similar to the Bismarck ordinance. The pertinent part of the New York statute reads as follows:

> Any person who with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned, commits any of the following acts shall be deemed to have committed the offense of disorderly conduct:
>
> \* \* \* \* \* \*
>
> 2. Acts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others.
>
> \* \* \* \* \* \*

N.Y. Penal Law, § 722 subd. 2 (McKinney's Consol.Laws, c. 40, 1944).

This statute, word for word, is the same as the Bismarck ordinance except for the words in the first paragraph of the statute, "with intent to." The first paragraph of the New York statute begins: "Any person who *with intent to* provoke a breach of

the peace," whereas the Bismarck ordinance begins: "Any person who provokes a breach of the peace." Under the New York statute intent is an element of the offense of disorderly conduct, whereas under the Bismarck ordinance intent is not an element of the offense of disorderly conduct.

A willful or unlawful purpose is not an element of the offense of disorderly conduct unless made so by statute * *.

27 C.J.S. Disorderly Conduct § 1(3) (1959).

The New York courts in construing § 722, subd. 2, supra, have held that the act or conduct of the accused must at least have disturbed the peace, or might reasonably be expected to cause or provoke a breach of the peace, or corrupt public morals. People v. Perry, 265 N.Y. 362, 193 N.E. 175. A breach of the peace is an offense well known to the common law. The common law definition of breach of the peace, though not controlling, is helpful in construing the statute on disorderly conduct. 12 Am.Jur.2d, Breach of Peace, § 35, p. 687.

In People v. Most, 171 N.Y. 423, 64 N.E. 175, 58 L.R.A. 509, it was defined as a "disturbance of public order by any act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community." See People v. Carcel, 3 N.Y.2d 327, 165 N.Y.S.2d 113, 144 N.E.2d 81.

Since the decision in People v. Perry, supra, it has been settled in New York that acts charged as disorderly conduct must be public in character, and such as actually do tend to disturb the public peace and quiet. People v. Monnier, 280 N.Y. 77, 19 N.E.2d 789.

The Court of Appeals of New York, in People v. Chesnick, 302 N.Y. 58, 96 N.E.2d 87, discussed the phrase "breach of the peace" in the following manner:

The key phrase of the statute is "breach of the peace" and, traditionally, that

language means a violation of public order and tranquility (see 5 Words and Phrases, p. 763 et seq.; Black's Law Dictionary [3rd ed.] p. 246; Restatement, Torts, § 116; Personal Property Law, § 76, Consol.Laws, c. 41). The classic definition, in modern times, of "breach of the peace" is given by People v. Most, 171 N.Y. 423, 429, 64 N.E. 175, 177, 58 L.R.A. 509: "It is a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community." "The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility." Cantwell v. State of Connecticut, 310 U.S. 296, 308, 60 S.Ct. 900, 905, 84 L.Ed. 1213, 128 A.L.R. 1352. And so, to constitute "disorderly conduct" there must be an actual or threatened "breach of the peace", which, in turn, means a "disturbance of the tranquility of the people of the state", People v. Perry, 265 N.Y. 362, 193 N.E. 175, 177. Here there was no troubling of the wonted calm of the whole community, or of any sizeable segment thereof.

The Bismarck ordinance provides that the acts in subdivision (b) provoke a breach of the peace, or whereby a breach of the peace may be occasioned. The offensive conduct must be such that a breach of the peace has become imminent or might reasonably be expected or intended to flow from such conduct. People v. Monnier, supra. A breach of the peace is a necessary element to the offense of disorderly conduct under the Bismarck ordinance.

Statutes providing punishment for disorderly conduct frequently include as an element of the offense the requirement that the act disturb or be likely to disturb the public peace. And in a jurisdiction where there is no statutory crime of breach of the peace, but where the statutory definition of disorderly conduct includes a breach of the peace element,

it has been held that the common-law definition of breach of the peace, though not controlling, is helpful in construing the statute on disorderly conduct.

12 Am.Jur.2d Breach of the Peace and Disorderly Conduct, § 34 (1964)

The law is clear in New York that Section 722 of the Penal Law was designed to prohibit a disturbance of public order by an act of violence, or by an act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of a sizable segment of the community. People v. Perry, 265 N.Y. 362, 193 N.E. 175. It has been held that private annoyances, however exasperating or reprehensible, are insufficient in law to constitute a violation of the disorderly conduct section where no breach of the peace has resulted. People v. Broadbent, 20 Misc. 2d 547, 192 N.Y.S.2d 889.

Here, as in the Broadbent case, the complaining witness testified that the act of the defendant was annoying to him. He infers that the defendant's act was offensive and annoying to others as required by the statute, but no other person testified.

Inasmuch as it is essential in a criminal case that each and every element constituting the crime be proven, it is obvious that the people have not substantiated their burden of proof. They have failed to prove beyond a reasonable doubt that the acts of the defendant were offensive to other persons.

People v. Coleman, 47 Misc.2d 355, 262 N.Y.S.2d 508, 509–510.

"However, it is clearly established by the highest Court of the State and the United States Courts that private or individual annoyances are not sufficient to constitute the offense of disorderly conduct. People v. Perry, 265 N.Y. 362, 193 N.E. 175; People v. McCauliff, 267 N.Y. 581, 196 N.E. 590;

People v. Monnier, 280 N.Y. 77, 19 N.E. 2d 789; * * *."

People on Inf. Hataling v. Dale, 47 N.Y. S.2d 702, 709, (Utica City Ct. 1944), quoting People v. Reid, 180 Misc. 289, 40 N.Y.S.2d 793.

There is no evidence in the record that the peace and quiet of the community was disturbed or that it might be disturbed by the conduct of the defendant or by the driver of the car. No evidence was adduced as to the kind of neighborhood in which the incident took place, or that there were other people nearby who were alarmed or disturbed or who may become alarmed or disturbed. The neighborhood may have been heavily populated or unpopulated, there may or may not have been people around. On this the record is silent.

The conduct of the defendant must be of such nature as to disturb the community or persons in the vicinity. City of Bismarck v. Anderson, supra.

As the Court of Appeals of the State of New York, quoted earlier in this opinion, said:

Here there was no troubling of the wonted calm of the whole community, or of any sizeable segment thereof.

I do not agree with the majority of the Court that all that was required under the Bismarck ordinance to constitute the offense of disorderly conduct was to show that "it is sufficient if the peace of only one person is disturbed."

In the Minnesota case cited in the majority opinion, State v. Reynolds, 243 Minn. 196, 66 N.W.2d 886, the Minnesota Supreme Court had before it an entirely different statute than the Bismarck ordinance. There the Minnesota Supreme Court said, in Syllabus 7:

Where a statute does not require that the disorderly conduct or act be committed in a public place or a specified place, then it is sufficient if the act is

committed within the confines of the jurisdiction of the court, and, dependent upon facts and circumstances, it may be enough if the peace of only one member of the public or of one person is disturbed.

Under the Bismarck ordinance, the acts charged as disorderly conduct must be public in character, and such as actually do tend to disturb the public peace and quiet. People v. Monnier, 280 N.Y. 77, 19 N.E.2d 789.

The acts of defendant in getting out of a car, walking over to another car, standing first on one side of the car and then on the other, making no gestures or attempts to enter the car, and without a showing that anyone other than the complainant was upset by his actions, are not sufficient to sustain the verdict.

The record discloses no loud or angry talk, no boisterous or profane language, no physical violence nor threat to commit violence; nor was there any act or incident that amounted to tumultuous or offensive conduct under the instructions of the court. The evidence does not warrant the jury in finding the defendant guilty of disorderly conduct within the meaning of the ordinance. It is therefore insufficient to support the verdict.

What we have said here should not be construed as an approval of the acts of this defendant. The defendant may have violated certain other provisions of the ordinances of the city of Bismarck, but he has not violated the ordinance under which this charge was brought. There can be no justification for the acts of the defendant. Nevertheless, and no matter how much we may dislike and condemn certain conduct, the ordinance must not be warped to fit the facts and no conviction can be had unless the facts fit the ordinance upon which the defendant was charged.

The judgment appealed from should be reversed and the trial court directed to dismiss the action.

TEIGEN, C. J., concurs in the dissent.