**Lillian M. SHORE et al., Plaintiffs,**

v.

**COUNTY OF MOHAVE et al., Defendants.**

**No. Civ. 74–125 Phx WEC.**

United States District Court, D. Arizona.

June 20, 1979.

John W. Miner, Los Angeles, Cal., for plaintiffs.

Arthur P. Greenfield and W. Charles Thomson, III, of Craig, Greenfield & Irwin, Phoenix, Ariz., for defendants.

## OPINION

## FINDINGS OF FACT

## CONCLUSIONS OF LAW

CRAIG, District Judge.

The above entitled cause was tried to the Court, sitting without a jury, April 3 and 4, 1979. As an accommodation to counsel, findings of fact and conclusions of law were to be submitted on or before June 1, 1979.

The action is one for damages resulting from an asserted false arrest and false imprisonment on October 8, 1972, and a false arrest and false imprisonment on October 9, 1972.

Plaintiffs, Lillian Shore and Andrea Shore, at all times mentioned herein, and at the present time, were, and are residents of California. Defendants are a body politic of the State of Arizona and the Sheriff of Mohave County, Arizona. The Court has jurisdiction pursuant to Title 28 U.S.C. § 1332.

On October 8, 1972, at approximately 10:30 in the morning, while traveling west on McCulloch Boulevard in Lake Havasu City, Mohave County, Arizona, Arlene E. Harrison, the owner and operator of a 1972 four-door automobile, stopped for a stop sign at the intersection of McCulloch Boulevard with Lake Havasu Avenue. Ms. Harrison is a resident of Las Vegas, Nevada, where she was employed as a cocktail wait-

ress. As a passenger in Ms. Harrison's vehicle was Ms. Eleanor Holdreth, who also is a resident of Las Vegas, Nevada, and employed as a cocktail waitress.

While stopped at the intersection, the Harrison vehicle was struck from the rear by an automobile driven by plaintiff, Lillian Shore. Accompanying Mrs. Shore was her daughter, plaintiff Andrea Joy Shore, who had reached the age of seven years on September 28, 1972. Some months prior to this incident Andrea had received open heart surgery.

Damage to the Harrison vehicle was minimal, and although the offer was made by plaintiff, Lillian Shore to pay for any damage to the automobile, no claim for damage was ever received by Mrs. Shore, and in fact, the damage was never repaired, and at the time Ms. Harrison traded that vehicle no deduction in value was made as a result of the then existing damage.

As a result of the accident, one Robert D. Rathbone, acting within the scope and purpose of his employment as a lieutenant in the Mohave County Sheriff's Office, arrived at the scene of the accident at approximately 10:45 a. m. on October 8, 1972. That officer made an "investigation." As a result of the officer's "investigation" and his observation of Mrs. Shore's physical condition the officer placed Mrs. Shore under arrest for driving under the influence of intoxicating liquor.

The arrest was made over the protestations of innocence by Mrs. Shore. At this point all rational conduct ended. Although there was no evidence of any potential escape or resistance to the announced arrest, other than the protestations of innocence, the arresting officer placed handcuffs upon Mrs. Shore and forcibly removed her to a waiting police vehicle. The seven-year old daughter was also placed in the police vehicle (not handcuffed).

Mrs. Shore was then transported to the sub-station of the Mohave County Sheriff's Office in Lake Havasu City. Mrs. Shore's daughter was transported to the same location.

Mrs. Shore continued protestations of her innocence, and requested a "balloon test". No facilities were available at the Mohave County Sheriff's Office sub-station at Lake Havasu City to perform either breath or blood alcohol tests. The record fails to disclose any practical sobriety tests to have been performed, either at the scene of the accident or at the Lake Havasu City sub-station of the Sheriff's Office.

At the sub-station in Lake Havasu City Mrs. Shore's daughter was forcibly removed from her custody, and Mrs. Shore and her daughter were then transported from Lake Havasu City to Kingman, Arizona, a distance of approximately 60 miles. Mrs. Shore was in the custody of a deputy sheriff, Sgt. D. Steele and a matron. Sgt. Steele transported Mrs. Shore and her daughter to the Mohave County Hospital at Kingman, Arizona where a blood alcohol test was performed at approximately 1:00 p. m. on October 8, 1972.

Following the blood alcohol test, Mrs. Shore and her daughter were transported to the Mohave County Sheriff's Office and the Mohave County Jail, where Mrs. Shore's seven-year old daughter was again forcibly removed from her custody. The child was transported to a "foster home". The record is silent as to where the "foster home" was located.

Mrs. Shore was then placed in a "tank" without a light, and which emitted an evil odor, either because of the form of disinfectant used or because of filth. There is a conflict in the description of this condition, the resolution of which is unimportant to these proceedings, other than for the discomfort of Mrs. Shore.

Mrs. Shore had in her possession in excess of $200 in cash. Apparently there was a standing order from the Justice of the Peace that DWI cases should post $240. as bail before release. The Sheriff's Office made no efforts, following the request of Mrs. Shore, to arrange for a bail bond in the City of Kingman, nor was Mrs. Shore allowed to make a telephone call to her family in California. In fact, contact with Mrs. Shore's family in California apparently was

made, because the record discloses that bail in the amount of $240 was dispatched by telegram from Los Angeles at 1:00 p. m. October 8, 1972.

Prior to the incident described in Lake Havasu City, Mrs. Shore, a registered nurse, was emotionally upset because of her pending divorce proceedings in California and was under the care of a psychiatrist. She and her daughter were visiting in Lake Havasu City for the weekend, and at the time of the incident in question were on their way to the marina at Lake Havasu City to go boating.

There is no evidence that Mrs. Shore had imbibed in any alcoholic beverage within 48 hours of the incident in question. Mrs. Shore had taken a drug in the form of a pill prescribed by her physician the evening before the incident in question. The effects of the pill taken by Mrs. Shore the evening previous are not, and could not be, related in any way to the facts which transpired on October 8, 1972.

Because of the circumstances under which she found herself in the "tank" at the County Jail in Kingman, Mrs. Shore was apparently near hysteria, and continued to protest her innocence.

After several hours in the "tank" Mrs. Shore was removed to another cell designed to occupy four inmates in bunk type facilities. The cell was occupied by at least two other female prisoners. Mrs. Shore was assigned to an upper bunk. Apparently no adequate ladder facilities, or other means of ingress and egress were provided for the upper bunk. In the center of the cell, which was open to the hallway of the jail, was located a commode. Sometime after she had climbed into the upper bunk Mrs. Shore started to descend for the purpose of using the commode. At this juncture the occupant of the bunk below reached up and fondled Mrs. Shore's legs, which Mrs. Shore interpreted as a lewd act, and was placed in further fear. She withdrew her attempts to descend until sometime later. She again attempted to descend for the purpose of using the commode. On this occasion she lost her balance and fell to the floor of the cell, striking her head on the base of the bunk opposite. This resulted in a deep gash wound to her right eye brow.

Mrs. Shore was then removed to the emergency room of the Mohave County Hospital, where the wound was closed and sutured. Mrs. Shore asserts that no anesthesia was used prior to the suturing of the wound. Dr. Rosenblatt, who performed the suturing, asserts anesthesia was used. There is no record on the hospital report that any anesthesia was administered. Mrs. Shore was returned to the County Jail, where she remained until approximately 10:00 p. m., when she was released on bail.

The authorities did not disclose the whereabouts of Mrs. Shore's daughter, other than she was being cared for in a foster home. An unnamed Deputy Sheriff, overhearing the discussion between Mrs. Shore and others in the Sheriff's Office, volunteered to transport Mrs. Shore to the foster home to recover her daughter. The Deputy then transported Mrs. Shore and her daughter to a motel in Kingman, Arizona, where Mrs. Shore and her daughter remained over night. The following morning, October 9, 1972, Mrs. Shore hired a taxi cab in Kingman to transport her the approximately 60 miles to Lake Havasu City for the purpose of recovering her automobile and returning to her home in California. Enroute to Lake Havasu City the taxi was stopped by a Sheriff's patrol car. Why that stop was made, or what the conversation was between the officers and the taxi driver, is unknown. Subsequent to the stop the taxi driver proceeded to the Lake Havasu City sub-station of the Mohave County Sheriff's Office, where Mrs. Shore and her daughter, Andrea, disembarked and entered the substation for the purpose of recovering the keys of her automobile and to determine its location.

Upon her entering the sub-station, Mrs. Shore was again confronted by Lt. Rathbone, who denied Mrs. Shore the possession of, or access to, her keys and the automobile. Mrs. Shore again became emotionally upset, and again demanded her keys and advice as to the location of her automobile,

and was told to "shut up and sit down." At this juncture Mrs. Shore, with her daughter, fled the sub-station in order to locate a telephone, which she would use to call her family in California to have them come to Lake Havasu City to transport Mrs. Shore and her daughter back to California. Shortly after Mrs. Shore and her daughter fled Lt. Rathbone took hot pursuit. With his vehicle Lt. Rathbone cut off the progress of Mrs. Shore and her daughter and chased after them.

At this juncture, on a gravel portion of the shoulder of the roadway on which Mrs. Shore was traveling, she either fell or was pushed by Lt. Rathbone to the ground. Whereupon Lt. Rathbone again put handcuffs on Mrs. Shore, and with the seven-year old daughter, Andrea, crying and beating on the good Lt. Rathbone, Mrs. Shore and her daughter were again returned to the Lake Havasu City sub-station of the Mohave County Sheriff's Office.

In the course of the trial Lt. Rathbone testified that Sgt. Steele had made the second arrest. Sgt. Steele testified, however, that he was not near the location of the arrest, and knew nothing of it until he received a radio call from Lt. Rathbone to assist in the arrest. Sgt. Steele's complete observation of what transpired was observing Lt. Rathbone forcibly inducting Mrs. Shore into the Lake Havasu City Sheriff's sub-station.

On this second arrest Mrs. Shore was charged with the crime of "sick and cared for."

Again at the Lake Havasu City Sheriff's sub-station the child, Andrea, was forcibly removed from her mother's custody. Mother and child were again transported to the Mohave County Jail at Kingman, where Mrs. Shore was again placed in a "tank".

At this juncture Mrs. Shore's family in California was again contacted. Mrs. Shore's husband and older daughter, age 16, and her attorney flew to Lake Havasu City, where they recovered Mrs. Shore's automobile and drove to Kingman, where Mrs. Shore was released later that night.

The Shore family again had the same difficulty in recovering seven-year old Andrea, but ultimately were successful and returned to California.

During her second incarceration in the "tank" at the Mohave County Jail Mrs. Shore was, understandably, in either an hysterical, or near hysterical condition.

It is interesting to note the blood alcohol test was made at the Mohave County Hospital at Kingman early in the afternoon of October 8, 1972. The results of that test indicated no detectable amount of alcohol in Mrs. Shore's blood and was not reported to the Sheriff's Office until some time on October 9th, after Mrs. Shore's release on bail.

Mrs. Shore's physical condition following her experience at Lake Havasu City, the Mohave County Jail at Kingman and the Mohave County Hospital at Kingman are best described by plaintiff's exhibits 11, 12, 13 and 14, being photographs taken immediately upon her return to California. Some months following the incidents in question a plastic surgeon in California reduced the unsightly scar on Mrs. Shore's right eye brow from the injury sustained in her fall in the jail and the suturing which took place at the Mohave County Hospital.

After the passage of a substantial amount of time following the incident in question Mrs. Shore received a notice from the Mohave County Attorney to either appear for trial on the DWI charge or forfeit the $240 bail. Plaintiff's counsel, following receipt of the notice, journeyed to Kingman and conferred with the County Attorney, and at that time was able to discover the results of the blood alcohol test, and thereafter upon motion of the County Attorney the action was dismissed for lack of evidence on December 13, 1972, and the bail was returned to Mrs. Shore by check dated December 26, 1972. The arresting officer's report of the incident on October 8, 1971, discloses only that Mrs. Shore was arrested for "driving while under the influence." It is presumed that the officer was referring to Title 28 A.R.S. § 692(A), a misdemeanor.

In reciting the foregoing facts, as found from the evidence adduced at trial, the

Court has deliberately refrained from going into detail with respect to the personal injuries suffered by Mrs. Shore and from the mental suffering, fright, shame, mortification, indignity and disgrace, as well as the mental suffering and harassment to her seven-year old daughter during the course of the incidents above described.

During the course of a two-day trial and from a review of the exhibits in evidence, the Court had ample opportunity to judge the credibility of the several witnesses called to testify and the credibility of their testimony.

■ There is no question but that an action for false imprisonment and malicious prosecution will lie in the jurisdiction of Arizona against the County, the Sheriff and his Deputies. See *Watzek v. Walker*, 14 Ariz.App. 545, 485 P.2d 3; *McClinton v. Rice*, 76 Ariz. 350, 265 P.2d 425; *State v. Maldonado*, 92 Ariz. 70, 373 P.2d 583; *Platt v. Greenwood*, 50 Ariz. 158, 69 P.2d 1032.

■ The primary question is whether, under the circumstances of the instant case, the arresting officer had probable cause to make the arrest and to proceed with the prosecution. From the foregoing recitation of the facts, it would appear that the arresting officer made the arrest after a cursory examination at the scene of the minor accident, and from a cursory observation of Mrs. Shore's physical appearance. It will be recalled that, following the arrest, Mrs. Shore was transported to the Lake Havasu City sub-station of the Sheriff's Office, and subsequently transported to Kingman. While Mrs. Shore continued to make protestations of her innocence there was nothing in the record to indicate that the arresting officer, or anybody else, made any effort to investigate the matter further. In *Watzek, supra*, the Arizona Court, as it has done in many cases, adopts the language and philosophy of the *Restatement of Torts*. The Court, in *Watzek, supra*, referred to § 622 Chap. 29 on Malicious Prosecution, Topic 3 on Probable Cause. That section reads as follows:

*"Existence of Probable Cause*

One who initiates or continues criminal proceedings against another has probable cause for doing so if he correctly or reasonably believes

(a) that the person whom he accuses has acted or failed to act in a particular manner, and

(b) that those acts or omissions constitute the offense that he charges against the accused, and

(c) that he is sufficiently informed as to the law and the facts to justify him in initiating or continuing the prosecution."

In *Watzek, supra,* the Court quoted Comment *i.* of the same section of the original Restatement. That comment is found as section *j.,* and is a Comment on Clause (c). That comment in pertinent part reads as follows:

*"j. Mistake of fact—Necessity for investigation.* Circumstances known or believed by the accuser may be incriminating to the accused and yet may not so clearly indicate guilt that a reasonable man would initiate criminal proceedings without investigation. *In determining whether an investigation should be made, the following factors are important*: the necessity of prompt action to prevent escape; the availability of information other than that in the possession of the accuser; *the existence of a ready opportunity to obtain an explanation from the person accused or to ascertain his reputation*; the character of the source from which the accuser's information comes. The accuser may properly be required to make inquiry as to the veracity of his informants when his belief is founded upon their information. *He may even be required to distrust the accuracy of his own observations when they are made under such circumstances that they may be suspected of inaccuracy.* In all these cases the fact that an investigation might prove dangerous, or the probability that it would be futile, are matters to be taken into account. (Emphasis supplied)

\* \* \*"

In the instant case it is apparent that the only effort the arresting officer made was

to refer Mrs. Shore under arrest to the Mohave County Hospital for a blood alcohol test, which ultimately proved to be negative. At this juncture it is interesting to note that § 28–1053 A.R.S. provides that when a person is arrested upon a charge of driving while under the influence of intoxicating liquor:

"* * * the arrested person shall immediately be taken before a magistrate within the county in which the offense charged is alleged to have been committed and who has jurisdiction of the offense, provided a person taken before a justice of peace shall be taken before the nearest or most accessible with reference to the place where the arrest is made, * * *."

It would appear that in the instant case a relatively short conversation with the accused at the Lake Havasu City sub-station or, indeed, at the Mohave County Jail would have dispelled any question with respect to Mrs. Shore's asserted intoxication. It is further noted that, contrary to the mandate of § 28–1053 A.R.S., no effort was made to present Mrs. Shore to a magistrate or justice of the peace immediately, or otherwise.

It is the considered opinion of this Court that, after listening to all of the witnesses and reviewing all of the circumstances in this case, the arresting officer lacked probable cause to make the arrest as he did.

■ It is uncontested that in the instant case a criminal proceeding was instituted by the defendants against the plaintiff, Mrs. Shore, and that those proceedings terminated in favor of the plaintiff, Mrs. Shore.

In *Ray v. City Bank and Trust*, D.C.Cir., 358 F.Supp. 630, the Court stated:

"Legal malice need not connote actual ill will or evil intent[; i]t instead may be evidenced by a wanton or reckless refusal to make reasonable investigation with regard to the propriety of a prosecution, or by the refusal to terminate such prosecution upon notice that it is wrongful." (Citations omitted.)

Certainly the instant case is an outstanding example of "a wanton or reckless refusal to make reasonable investigation with regard to the propriety of a prosecution, or by the refusal to terminate such prosecution upon notice that it is wrongful."

The criminal action in the instant case was pending long after the plaintiff, Mrs. Shore, was released on bail, even though the prosecuting authorities were fully aware of the lack of evidence of intoxication as early as October 9, 1972, and, in fact, the action was not favorably terminated until after the plaintiff had received a notice to either forfeit bail or appear for trial, and then only through the intervention of her counsel at Kingman. The action was dismissed on December 13, 1972, and bail was ultimately returned to her on December 26, 1972.

While the second arrest on October 9, 1972, did not result in a prosecution, because the statutory law in Arizona (and as far as this Court is aware, in no other jurisdiction) is it a crime for being "sick and cared for", what the second arrest indicates beyond question, is not only legal malice, but actual malice.

In *Boies v. Raynor*, 89 Ariz. 257, 361 P.2d 1, The Arizona Supreme Court stated:

"* * *

With regard to damages for false arrest and imprisonment it is the general rule that in actions for personal injuries, mental suffering, including fright, shame, and mortification from the indignity and disgrace, consequent upon an illegal detention is usually considered an injury for which compensation may be made. Although there are some jurisdictions which do not follow this rule we believe it to be sound, and therefore, hold that it is an element of damage."

Under the totality of the circumstances in this case, in addition to concluding that the defendants are guilty of false arrest and malicious prosecution, although it was not suggested during the course of the trial, the Court might well conclude that there was a violation of the Eighth Amendment to the Constitution of the United States, which provides that "Excessive bail shall not be required, nor excessive fines imposed, nor

cruel and unusual punishment inflicted [upon an innocent person]." In this case it appears that "cruel and unusual punishment was inflicted upon an innocent person."

Mr. Justice Ross, in *Platt v. Greenwood*, 50 Ariz. 158, 69 P.2d 1032, stated the principle as well as anyone when he said:

" * * * The law is very jealous of the liberty of the individual, and while peace officers in the discharge of their duties must not be obstructed or interfered with, they may not lawfully deprive a citizen of his liberty except in the manner provided by law."

In pertinent part, Rule 54(c), Federal Rules of Civil Procedure provides:

" * * * Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

In *Guillen v. Kuykendall*, 470 F.2d 745, the Court stated, following its reference to Rule 54(c) of the Federal Rules of Civil Procedure:

"It is not necessary to claim exemplary damages by specific denomination if the facts show that the wrong complained of was 'inflicted with malice, oppression, or other like circumstances of oppression', *Alexander v. Jones*, 29 F.Supp. 690 (E.D., Okla.1939), and 22 Am.Jur.2d Damages § 293. * * *."

The foregoing Opinion shall constitute the Findings of Fact and Conclusions of Law contemplated by Rule 52(a), Federal Rules of Civil Procedure.

## JUDGMENT

Pursuant to Rule 58 Federal Rules of Civil Procedure, and pursuant to the Opinion, Findings of Fact and Conclusions of Law filed simultaneously herewith,

IT IS ORDERED, ADJUDGED AND DECREED that plaintiff, Lillian Shore shall have judgment against the defendants in the amount of: (a) One Thousand Five Hundred Fifty-one and 24/100 Dollars as special damages, (b) Seventy-five Thousand Dollars as compensatory damages and (c) Twenty-five Thousand Dollars as exemplary damages.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff, Andrea Shore shall have judgment against the defendants in the amount of Twenty-five Thousand Dollars.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiffs shall have and recover their costs of suit as provided by law.