454 P.2d 167

The STATE of Arizona, Appellee,

v.

Michael George DeROSS, Appellant.

No. 1 CA–CR 158.

Court of Appeals of Arizona.

May 8, 1969.

Gary K. Nelson, Atty. Gen., Carl Waag, Asst. Atty. Gen., for appellee.

Calvin C. Thur, Scottsdale, for appellant.

MOLLOY, Judge.

Appellant, found guilty of obstructing a public officer [1] while the officer was arresting appellant's brother, challenges his conviction primarily on the basis of certain instructions to the jury. Our determination of appellant's contentions requires us to consider the scope and applicability of the rule which gives one the right to aid another's resistance to an unlawful arrest.

The important figures in the case are appellant, his younger brother, Francis, and Officers Bachman and LaBash of the Phoenix police force. The events leading up to the charge against appellant occurred in or about the residence of Francis' father-in-law in the late evening hours of June 25, 1967. Appellant, Francis, and others were engaged in a noisy controversy when Francis' father-in-law summoned the police and asked them to remove appellant and others from the premises. When Officers Bachman and LaBash arrived in answer to the call, they first apprehended one of the crowd, who was intoxicated, and then they ordered appellant and the others outside and required them to produce identification. After some acrimonious debate over the arrest of the intoxicated person, the officers communicated with headquarters to ascertain if there were any warrants outstanding against any of the persons at the scene. The response was negative with respect to everyone except Francis, who had, according to the officers' testimony, two warrants outstanding against him, one for a traffic violation and another for failing to appear at the hearing on the former.

According to the officers' testimony, they advised Francis of the existence of the outstanding warrants and informed him that it was necessary for them to place him under arrest and to take him to the station. Francis' version of these events is as follows:

"* * * And then Officer LaBash walked over to me and says, 'I have got to take you in.'

"So I said, 'Fine. If you have got to take me you have got to take me in.'

"So I went with him.

"Q Did he explain to you why he was taking you in?

"A If he did I didn't hear him."

Any evidence of resistance to Francis' arrest comes from the police officers. According to them, Francis proceeded to the police car with Officer LaBash, but was hesitant about getting in. There was testimony that he then indicated he wished to kiss his wife "goodbye." Officer Bachman pushed or prodded Francis into the back seat, to which Francis reacted by "stiffening." When Francis was in, or nearly in, appellant, who had been at a neighbor's house, came running excitedly toward the car demanding to know why Francis was being arrested. According to appellant, Francis answered, "I don't know." Shortly thereafter, it is undisputed that appellant struck Officer Bachman a hard blow to the face. One of the two lines of defense asserted by appellant at the trial was that this blow was struck following an unprovoked attack upon him by Officer Bachman. The second line of defense, with which we are here concerned, was the claimed right of appellant to resist or obstruct the assertedly unlawful arrest of his brother.

Most of the issues in the case involve to some extent the following three instruc-

1. In violation of A.R.S. § 13–541, as amended, which reads as follows:

"A. A person who attempts by means of any threat or violence to deter or prevent a public officer from performing any duty imposed upon the officer by law, or who wilfully resists, delays or obstructs a public officer in the discharge or attempt to discharge any duty of his office, or who knowingly resists by the use of force or violence the officer in the performance of his duty, where the punishment is not otherwise specifically prescribed, shall be punished by a fine not exceeding five thousand dollars and imprisonment in the state prison for not to exceed five years, or by imprisonment in the county jail for not to exceed one year. * * *"

tions which were given sequentially by the trial judge:

> "A person illegally arrested can resist arrest with such force as is reasonably necessary."

> "Now, the issue in this case is whether or not the defendant, Michael DeRoss, obstructed the officers in the arrest of Francis DeRoss.

> "The legality of the arrest of Francis DeRoss is not in issue."

The first of these instructions was requested by appellant, and the second was given by common consent as expressing the theory of the State's case. The third instruction quoted, to which appellant takes vigorous exception, was given by the trial judge *sua sponte* after appellant's counsel, in argument to the jury, asserted the unlawfulness of the arrest of Francis DeRoss as justification for the defendant's actions. One of appellant's principal contentions is that this instruction foreclosed a defense that he was entitled to have the jury consider. We will first resolve this contention.

■ By a long-standing and increasingly criticized[2] common-law rule, a person unlawfully arrested may resist such arrest by the use of reasonable force. John Bad Elk v. United States, 177 U.S. 529, 20 S.Ct. 729, 44 L.Ed. 874 (1900); Dugan v. State of Arizona, 54 Ariz. 247, 250, 94 P.2d 873, 874 (1939); State v. Robinson, 6 Ariz.App. 424, 427, 433 P.2d 75, 78 (1967). While there are relatively few pertinent authorities, it has been held that the right to resist extends beyond the intended arrestee to others who come to his aid. People v. Craig, 152 Cal. 42, 91 P. 997, 1001 (1907); Jackson v. Superior Court, etc., 98 Cal.App. 2d 183, 219 P.2d 879, 883 (1950); People v. Perry, 79 Cal.App.2d Supp. 906, 180 P.2d 465, 470 (1947). The right of one person to interfere in an unlawful arrest of another was recognized by our own Supreme Court in Platt v. Greenwood, 50 Ariz. 158, 69 P.2d 1032 (1937).

■ It does not inevitably follow from these principles, however, that the appellant here is entitled to the defense asserted. In the root California authority, People v. Craig, *supra,* at 91 P. 1001, quoted in People v. Perry, *supra,* at 180 P.2d 470, it is stated that the intervening person " * * * cannot interfere except *in aid* of a lawful *resistance by the person threatened.*"[3] (Emphasis added.) In the absence of controlling Arizona authority to the contrary, we think that this rule stated by the Supreme Court of California, requiring resistance on the part of the arrestee, is in accord with sound considerations of public policy. Most of the reasoning of the critics of the old common-law rule is appropriate;

---

2. *See* section 5 of the Uniform Arrest Act, a part of the Model Penal Code, and a statement in support of its abrogation of the common-law right to resist unlawful arrest by the late Judge Learned Hand in 1958 Proceedings, American Law Institute, at 254; Warner, The Uniform Arrest Act, 28 U.Va. L.Rev. 315, 330–31 (1942); The Right to Resist an Unlawful Arrest: An Outdated Concept, 3 Tulsa L.J. 40 (1966). California, among several other states, has legislatively abolished the right to resist an illegal arrest by a peace officer. *See* Calif.Penal Code, § 834a, enacted in 1957, and recently considered in People v. Curtis, 74 Cal.Rptr. 713, 450 P.2d 33 (Supreme Court of Calif.1969). The intermediate appellate court in New Jersey, finding no higher contrary authority, prospectively abolished the right to resist in that state in State v. Koonce, 89 N.J.Super. 169, 214 A.2d 428 (1965). *See also* United States v. Heliczer, 373 F.2d 241 (2d Cir. 1967), cert. denied, 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967).

3. In stating this rule, the court, in People v. Craig, had under consideration a California statute defining the right of one person to aid another in defending against a threatened injury. *See,* for a similar statute permitting resistance to protect a member of one's family, A.R.S. § 13–1205. The California court, in People v. Craig, stated that the California statute under consideration there " * * * does not differ substantially from the right as it existed under the common law." 91 P. at 1001.

in essence, that criticism[4] advances the sound proposition that the legality of an arrest is better and more safely determined in a speedy court proceeding than in a street brawl. There is little reason for the law to encourage active resistance on the part of a third person when the person whose liberty is actually at stake has peaceably submitted to an arrest.

The only Arizona authority which would arguably give justification to the initiation of an active resistance by a third person is Platt v. Greenwood, *supra,* and we do not read it as requiring rejection of the rule quoted from People v. Craig. The arrestee Nordyke in Platt v. Greenwood was intoxicated, and prior to the attempt to arrest him, " * * * although requested by the sheriff to get off the streets and go home, refused or neglected to do so." 50 Ariz. at 160, 69 P.2d at 1033. The alleged obstructor, Platt, was an attorney, and when the sheriff approached Nordyke to arrest him, Nordyke " * * * told the sheriff plaintiff was his attorney." 50 Ariz. at 165, 69 P.2d at 1035. Platt's resistance was confined mainly to "arguing" and at most consisted of getting in between Nordyke and the sheriff, a maneuver in which Nordyke presumably cooperated. Platt did not " * * * use or threaten to use any physical force, to prevent * * * " the sheriff from taking Nordyke into custody. 50 Ariz. at 161, 69 P.2d at 1034. In short, Platt's resistance was in aid of Nordyke's, and did not exceed Nordyke's in quality.

█ Appellant contended that the arrest of Francis was illegal for two reasons: (1) the officers had no warrants with him and the warrants were not introduced into evidence at the trial; (2) the officers did not advise Francis of the reason for his arrest. With regard to the first ground, it should be noted that Arizona, unlike many jurisdictions (see Smith v. State, 208 So. 2d 746 (Miss.1968) ), has a statute which specifically authorizes an arrest " * * * by virtue of a warrant * * * " without its physical possession. A.R.S. § 13–1407.

With regard to the second ground, we are loathe to conclude that an arrest for which there is a valid substantive basis is rendered unlawful and open to physical resistance merely because the arresting officer fails to articulate its basis to the arrestee.

While A.R.S. § 13–1407 states that an officer making an arrest by virtue of a warrant " * * * shall inform the person to be arrested of the cause of the arrest and of the fact that a warrant has been issued * * *," there are exceptions to the requirement stated, and it is difficult to see why, in the context of the issues in this case, it should be construed as mandatory rather than directory. If the duty to arrest by virtue of a warrant exists, it should not completely cease to exist merely because the officer should fail to verbalize the proper grounds. The only case which appellant cites to the contrary, McGeorge v. Commonwealth, 237 Ky. 358, 35 S.W.2d 530 (1931), involved resistance by the arrestee to an attempted arrest without a warrant for being drunk in a public place, where the arrestee presented testimony that he was not drunk, and that he was pulled along by the officer after protesting against going and demanding of the officer to know the charge on which he was being arrested. There was no protest or demand on the part of Francis in the record which is now before us.

█ But even if there were a technical illegality in Francis' arrest, there is nothing in the present record to show that appellant's interference *was in aid of a resistance on the part of Francis.* Appellant's own testimony indicates that, prior to the time of any altercation between himself and Officer Bachman, Francis was in the back seat of the police car and the door was closed. If Francis' previous actions could be construed as rising to the level of resistance, which is somewhat dubious in view of his own testimony and other evidence indicating that he found the manner and not the fact of custody objectionable, there is nothing in the record to indicate that Fran-

4. *See* the sources and authorities in n. 2, *supra.*

cis was *then* offering any resistance. Under those circumstances, *i. e.,* Francis' acquiescence, interference on the part of appellant was as unjustifiable as the defendant's post-arrest attack on the officer in State v. Dugan, *supra.* We think the trial judge correctly, if belatedly, concluded that the legality of Francis' arrest was not in issue under the evidence adduced at this trial.

We think the same reasoning applies to appellant's contention that he was entitled to an instruction that, if the officers were using excessive force in taking Francis into custody, he was justified in interfering. Appellant cites in this connection A.R.S. § 13–1205, which was the subject of another instruction offered by appellant and refused by the trial judge. § 13–1205 provides as follows:

> "A. Resistance sufficient to prevent the commission of a public offense may be made by the party about to be injured to prevent an offense against his person or family, or some member thereof, or to prevent an illegal attempt by force to take or injure property in his lawful possession.
>
> "B. Any other person in aid or defense of the person about to be injured may offer resistance sufficient to prevent the offense."

■ If otherwise appropriate, we would have a difficult time finding sufficient evidence to justify an instruction on excessive force. The most that the officers were doing, in appellant's words, was "pushing" Francis "around." But if excessive force had been used at some time, there is a dearth of evidence in the record tending to show that its use or threatened use continued after appellant arrived beside the police car. To the contrary, the evidence indicates that when appellant arrived on the scene, Francis was alone in the back seat, with the doors closed. Appellant cites no authority to the effect that interference with police officers can be justified on the basis of past and completed excessive force, and we find none.

The next major contention advanced by appellant is that, even though, as we have held, the jury was properly instructed that the legality of Francis' arrest was not in issue, appellant's counsel was misled into arguing the issue to the jury by the trial judge's previous indication that requested instructions pertinent to that issue would be given. Appellant contends that the subsequent, spontaneous instruction rendered a substantial portion of his argument to the jury irrelevant, and deprived him of an opportunity to argue his case to the jury in the light of the complete instructions as finally given. We find ourselves in agreement with appellant on this contention.

Appellee did not seek to convict appellant of obstructing or resisting his own arrest. As the second of the instructions quoted above pointed out, the issue in the case was whether appellant " * * * obstructed the officers in the arrest of Francis DeRoss." The trial judge, however, on appellant's request, instructed the jury that a person illegally arrested could resist arrest, in the terms of the first instruction set forth above. The trial judge also, on appellant's request, read to the jury the provisions of A.R.S. § 13–1407, *supra,* and Rule 14 of the Rules of Criminal Procedure, subparagraph B, 17 A.R.S. of which states:

> "No unnecessary or unreasonable force shall be used in making an arrest, and the person arrested shall not be subjected to any greater restraint than is necessary for his detention."

While A.R.S. § 13–1407 may have had a proper place in the case in any event, as pertaining to the duty the officers were performing at the time of the alleged obstruction, there was no reason for giving either of the other instructions noted unless the arrest of Francis was to be an issue in the case. The giving of instructions at appellant's request concerning the right to resist an illegal arrest and the statutory method and degree of force of an arrest on a warrant to be employed in making an arrest could have and obviously did lead appellant's counsel to conclude that the legal-

ity of Francis' arrest *was* in issue. A substantial part of counsel's argument was, accordingly, directed to the defense of unlawful arrest.

Rule 51(a) of the Rules of Civil Procedure, 16 A.R.S. states, in part, that "The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, * * *" There is no criminal rule upon the subject, and the civil rule applies in criminal cases by virtue of Rule 272 of the Rules of Criminal Procedure. Our Supreme Court has stated that the purpose of the portion of Rule 51(a) quoted above is "* * * to give counsel an opportunity to argue the facts in the light of the law as it will be announced insofar as covered by the request." Eldredge v. Miller, 78 Ariz. 140, 147, 277 P.2d 239, 243 (1954).

 An effective argument to the jury is an important right in a criminal trial. *See, e. g.,* People v. Don Carlos, 47 Cal.App. 2d Supp. 863, 117 P.2d 748, 750 (1941). The argument in behalf of appellant was reasonably formulated in view of the instructions which counsel for appellant had requested and thought would be given. The foundation for the principal defense argued to the jury was utterly destroyed by the court's last-minute instruction and in our view the defendant was denied a fair trial when this happened.

Appellant makes the further contention that he was wrongly foreclosed from calling attention to the fact that the State did not offer into evidence the warrants which were said by the police officers to be outstanding against Francis DeRoss at the time of his arrest. Were we only concerned with the undisputed evidence at this trial, we would agree with the trial court that the existence of such warrants was beside the point, for though Francis may have been unlawfully arrested, he had under the facts here acquiesced in that arrest, and we have held that an interloper may not volunteer to resist by force an arrest that the arrestee himself is not resisting. But, if on retrial, there should develop

some evidence that the defendant was assisting his brother to resist arrest, then under the authorities previously cited, the legality of Francis' arrest would come in issue. If so, we see no good cause to foreclose the defendant from arguing that there were no warrants in existence for the arrest of Francis. Actually, the only evidence in this record of the existence of such warrants is hearsay, and the failure of the prosecution to produce the warrants at the trial is certainly some evidence of nonexistence. *See* State Tax Commission v. Graybar Electric Company, 86 Ariz. 253, 257, 344 P.2d 1008, 1011 (1959); 2 Wigmore, Evidence §§ 285, 291 (3d ed. 1940).

Reversed.

HATHAWAY and KRUCKER, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.