457 P.2d 289

The STATE of Arizona, Appellee,

v.

Betty Lou TAGES, Appellant.

No. 2 CA–CR 141.

Court of Appeals of Arizona.

July 17, 1969.

**128**

Gary K. Nelson, Atty. Gen., Carl Waag, Asst. Atty. Gen., for appellee.

Erik M. O'Dowd, Tucson, for appellant.

MOLLOY, Chief Judge.

Appellant was convicted of obstructing a public officer while the officer was attempting to execute a warrant for the arrest of her husband. Appellant contends that the trial judge erroneously refused to give an instruction that "Merely remonstrating with an officer in behalf of another, or criticizing an officer * * *" would not constitute a violation of the statute under which this prosecution is brought.

Appellant is the wife of Douglas Tages. On December 23, 1967, Detective Rossette and Officer Walker, of the Tucson Police Department, were advised that there was a felony warrant outstanding for the arrest of Douglas Tages, and that he had been seen in Tucson that day. Rossette saw the warrant, but he did not carry it on his person. The two officers were dressed in plain clothes and were working together as a part of the "tactical operations unit" of the police department at about 11 p. m., when they saw Douglas Tages sitting at the bar in Johnny's Place, a saloon on South Meyer Street in Tucson. Appellant was seated next to her husband at the bar.

The evidence is conflicting as to what happened thereafter. According to the officers, they entered the bar, identified themselves to Douglas Tages, advised him that a warrant was outstanding for his arrest, and told him that he would have to come with them. Still according to the officers, Douglas Tages was leaving the bar with them when appellant stated, "You aren't going to take my loved one," and accosted Officer Walker with a 20-some inch metal shoehorn and started, and participated in, a physical struggle which enabled Douglas Tages to break temporarily free from Officer Walker's grip.

The three eyewitnesses called by appellant, on the other hand, did not hear the officers identify themselves to Douglas Tages, and all three testified that appellant remained seated throughout the encounter between the officers and Douglas Tages and did nothing of a physical or physically menacing nature toward the officers. According to these witnesses, appellant's activities prior to her own arrest were confined to making remarks, to the officers or to Douglas Tages, such as the following (not necessarily in evidentiary or chronological order):

"* * * That is my husband * * * If you want to talk to him, talk to him right here * * * Well, don't go anyplace * * * Don't go anywhere with them unless they show you a warrant for

. your arrest * * * We don't even know they are cops * * * Don't go anywhere, Honey, until he show you a warrant for your arrest."

The jury found appellant guilty as charged of violating A.R.S. § 13–541, which is our version of a type of legislation widely adopted in this country to prevent interference with public officers in the execution of their duties.[1] It is worth noting that our statute, captioned in part "Resisting, delaying, coercing or obstructing public officer * * *," defines three separate but closely related forms of the offense, or, perhaps more accurately stated, identifies three different types of offenders. The second or third offenders defined commence with the words "or who." As the "Historical Note" under § 13–541 points out, the section is derived from two California statutes. The first and third parts of our statute are essentially identical to § 69 West's Ann.Pen.Code (1955), except that the California statute is applicable only with respect to "executive" officers. The second or middle part of the statute is essentially identical to § 148 of the same Penal Code. Underscoring the second, or middle part, upon which appellant focuses attention here, our statute reads as follows:

"A. A person who attempts by means of any threat or violence to deter or prevent a public officer from performing any duty imposed upon the officer by law, *or who wilfully resists, delays or obstructs a public officer in the discharge or attempt to discharge any duty of his office,* or who knowingly resists by the use of force or violence the offi-

cer in the performance of his duty, where the punishment is not otherwise specifically prescribed, shall be punished by a fine not exceeding five thousand dollars and imprisonment in the state prsion for not to exceed five years, or by imprisonment in the county jail for not to exceed one year." (Emphasis added) A.R.S. § 13–541, subsec. A, as amended.

The critical instruction requested by appellant reads in full as follows:

"Merely remonstrating with an officer in behalf of another, or criticizing an officer while he is performing his duty, does not amount to obstructing, hindering or interfering with an officer."

In refusing to give the instruction, the trial judge indicated that he felt it approached being a comment on the evidence, and that the lack of a clear-cut definition for "remonstrating" would make the instruction confusing to the jury. The jury, which was instructed in the language of the entire statute, was not given any other instruction to the effect that critical or argumentative words, alone, were insufficient for conviction.

The requested instruction is a direct quotation from 39 Am.Jur. § 10 Obstructing Justice, p. 508, which in turn is substantially excerpted from a passage in Annot., 48 A.L.R. 746, 753, stating a general rule taken from several older cases. Similar statements are found in District of Columbia v. Little, 339 U.S. 1, 6, 70 S.Ct. 468, 471, 94 L.Ed. 599, 603 (1950): "* * mere remonstrances or even criticisms of an officer are not usually held to be the

---

1. Obstructing an officer in the performance of his public duties was an offense at common law, punishable as a misdemeanor. Perkins on Criminal Law (2d ed. 1969), pp. 495–98; People v. Krum, 374 Mich. 356, 132 N.W.2d 69, 71 (1965). In most jurisdictions the offense is now proscribed by statute, of which there are a considerable variety. Some condemn only one who "resists" an officer; others use the words "resist, obstruct, or op-

pose"; others use "resist, obstruct, or abuse"; still others employ terms such as "intimidate," "interfere with," and "impede." *See* Annot., 48 A.L.R. 746; 18 U.S.C.A. § 111; and State v. Harris, 4 Conn.Cir. 534, 236 A.2d 479 (1967). We are not aware of any besides our own statute and the California statute from which it is derived, *see infra,* which use the term "delays."

**130**

equivalent of unlawful interference"; and in Gaston v. State, 239 Miss. 420, 123 So.2d 546, 549 (1960): "Merely remonstrating with * * * or criticizing an officer * * * does not amount to an attempt to intimidate or impede him." *See also* 3 Anderson, Wharton's Criminal Law and Procedure (1957) § 1284, p. 634; and *compare* State v. Harris, 4 Conn.Cir. 534, 236 A.2d 479, 482–83 (1967), decided under a statute which punishes anyone who " * * obstructs, resists *or abuses* * * *" an officer (emphasis added).

While the word "obstruct" has been defined in this context as meaning " * * * to be or come in the way of," and has been said to imply " * * * some physical act or exertion," Landry v. Daley, 280 F.Supp. 938, 959 (N.D.Ill.1968), there are a number of authorities holding that resistance or obstruction may be committed without the employment of actual violence or direct force,[2] and we are unwilling to hold that non-threatening speech, alone, without force, can never in any circumstances constitute a violation of our statute. *See* People v. Cooks, 58 Cal.Rptr. 550 (App. Dep't Sup.Ct.1967) (where the defendant persistently counseled an unjustified resistance by another to a lawful police request to furnish identification). Conceivably, too, a verbal harangue may be so staged and be of such length and disconcerting in its character as to materially impair an officer's ability to carry out his duties. *Cf.* State v. Harris, *supra*, 236 A.2d 479, decided under the statute proscribing "abuse" of an officer.

But we regard these situations as being at the outer limits of what may be punished under an anti-obstruction statute. Speech alone, however offensive in the non-criminal sense, does not constitute an offense even under a statute such as that in Connecticut unless the officer's job is made more difficult. State v. Neubauer, 2 Conn. Cir. 169, 197 A.2d 93 (1963). Policemen are no more exempt from criticism than cabinet ministers. *See* Rex v. Cook, 11 Can.Crim.Cas. 32 (British Columbia 1906), noted at 48 A.L.R. 754.

■ It is true that, in this jurisdiction, an officer may make an arrest on the basis of a warrant without producing the warrant itself, A.R.S. § 13–1407, but nothing in that, or any other statute, precludes an inquiry by the arrestee or by another in his behalf into the nature of the warrant and the identity of the persons making the arrest. Under these circumstances, we think that speech which is non-threatening,[3] and which is not accompanied by physical force, is punishable only when it is substantially equivalent to force, that is, when it is intended to and does incite an unlawful resistance by another to the discharge of official duty[4] or when the speech itself by its very volume and intensity interferes substantially with the carrying out of an official duty. *See* People v. Cooks, *supra*, 58 Cal.Rptr. 550; Commonwealth ex rel. Walker v. Sheriff, 3 Brewster (Pa.), 343, 344 (Qu.Sess.Phila.Co.1869); and State v. Neubauer, *supra*, 197 A.2d 93.

■ It is our view that the instruction requested by appellant was proper and that some limitation along these lines is con-

2. In re Bacon, 240 Cal.App.2d 34, 49 Cal. Rptr. 322, 332 (1966), cited in n. 10 of In re Culver, 69 A.C. 937, 73 Cal.Rptr. 393, 397, 447 P.2d 633, 637 (1968); cases collected in the Annot., 48 A.L.R. 746, at 749 et seq.

3. The requisites of language in order to constitute a proscribed "threat" are set forth in State v. Scott, 123 La. 1085, 49 So. 715 (1909).

4. A verbal incitement to "imminent lawless action" is not constitutionally protected free speech. *See* Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (decided June 9, 1969); Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); and Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951).

stitutionally necessary. Here, under the facts as presented by the defendant, she did no more than remonstrate against the arrest of her husband. If the jury accepted this testimony at face value, as it had the right to do, it may have convicted, believing that such conduct alone constituted a violation of the broad language of our statute. The requested limiting instruction was directed at this impermissible construction. While the term "merely remonstrating" may be less than precise, we think "remonstrate" is well enough understood as conveying the idea of a protest against some fault or wrong (Webster's Third New International Dictionary) and does not carry with it any confusing ambiguity.

■■ As to matters which may possibly arise on retrial, appellant contends that the failure of the State to introduce the warrant itself into evidence constituted a failure on its part to prove that the officers were engaged in a lawful duty, i. e., executing a *valid* arrest warrant. The only evidence in the case regarding the existence of the warrant was Rossette's testimony that he saw it. The warrant itself is the best evidence of its existence, and in State v. DeRoss, 9 Ariz.App. 497, 454 P.2d 167, 172 (1969), we stated that nonproduction was some evidence of nonexistence. Where there is secondary evidence of its existence, however, and in the absence of any conclusive contrary indication, a permissible inference of validity [5] is available to the fact finder. State v. McGowan, 243 N.C. 431, 90 S.E.2d 703, 705 (1956); Underhill's Criminal Evidence § 801, p. 1816. Appellant suggests that she could not require production of the warrant by use of the discovery process, see Rule 195 of the Rules of Criminal Procedure, 17 A.R.S., but we think that, under the inherent power of the court, the warrant would be subject to production.[6]

Appellant also contends that instructions given and refused by the court on the subject of mistake of fact and criminal intent left the jury free to find appellant guilty without finding knowledge on her part that Rossette and Walker were police officers. In arguing this issue, both appellant and appellee have overlooked the following instruction, apparently given by the trial judge on his own motion, in a later part of the charge:

"I further instruct you that in order to constitute the offense of resisting or obstructing justice it is essential that the defendant have knowledge that the person obstructed is a peace officer; and consequently it is incumbent on an officer, seeking to make an arrest, to disclose his official character, if not known to the defendant."

■ This instruction meets the objection advanced by appellant. An instruction such as this one is clearly necessary where the officer's status as such may not be known and a conviction may be based upon any of the three sub-parts of § 13–541, two of which are prefaced by "wilfully" and "knowingly." *Contrast* United States v. Lombardozzi, 335 F.2d 414, 10 A.L.R.3d 826 (2d Cir. 1964), and Annot., "Scienter as Element of Offense of Assaulting, Resisting, or Impeding Federal Officer," 10 A.L.R.3d 833.

Reversed.

HATHAWAY and KRUCKER, JJ., concur.

---

5. To support conviction, the warrant or other process being executed need only be "* * * valid on its face * * *" *See* the cases collected in Annot., 10 A.L.R.3d 1146, at 1152.

6. *See* State ex rel. Mahoney v. Superior Court, 78 Ariz. 74, 275 P.2d 887 (1954), and State v. Wallace, 97 Ariz. 296, 300, 399 P.2d 909, 912 (1965).