570 P.2d 1280

**STATE of Arizona, Appellee,**

v.

**Bill Don SNODGRASS, Appellant.**

**No. 1 CA–CR 2339.**

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 7, 1977.

Rehearing Denied Oct. 19, 1977.

Review Denied Nov. 1, 1977.

Bruce E. Babbitt, Atty. Gen. by Galen H. Wilkes, Asst. Atty. Gen., Phoenix, for appellee.

Estrada & Kobashi by Carlos R. Estrada, Phoenix, Traynor & Herbert, P. C. by John D. Herbert, Chandler, for appellant.

## OPINION

WREN, Judge.

Appellant, Bill Don Snodgrass, was charged with aggravated assault (or in the alternative, obstructing justice) in Count I and with obstructing justice in Count II, arising from a disturbance in Chandler, Arizona, in January of 1976. Following a preliminary hearing Count I was dismissed and a subsequent information was filed on Count II,[1] charging a violation of § 13–541, as amended 1967. Pursuant to a plea bargain appellant pleaded no contest to the Information. The trial court found appellant guilty of obstructing justice and placed him on probation for three years, conditioned upon his completion of six months incarceration in the Maricopa County jail.

It is the appellant's contention on appeal that A.R.S. § 13–541(A) (Obstructing Justice) is void for vagueness and overbreadth on its face and as applied to him in the instant case.

---

1. The Information charging appellant with the offense stated:

"IN THE NAME AND BY THE AUTHORITY OF THE STATE OF ARIZONA, Bill Don Snodgrass is accused this 20th day of February, 1976 by the County Attorney of Maricopa County, State of Arizona, by this Information, of the crime of *Obstructing, a Felony,* committed as follows, to-wit:

"The said Bill Don Snodgrass on or about the 24th day of January, 1976 and before the filing of this Information at and in the County of Maricopa, State of Arizona, attempted, *by means of* a threat *or* violence, to deter or prevent a public officer to-wit: *Officer Maxwell* from performing a duty imposed upon the officer by law, *or* willfully resisted, delayed *or* obstructed a public officer in the discharge *or* attempt to discharge a duty of his office, *or* knowingly resisted, by the use of force *or* violence, an officer in the performance of his duty, all in violation of A.R.S. § 13–541, as amended 1967, contrary to the form, force and effect of the statute in such cases made and provided and against the peace and dignity of the State of Arizona." (Emphasis added.)

We set forth the essential facts as follows: At approximately 9:00 p.m. on January 24, 1976, appellant was attending a wedding reception for one of his daughters in Chandler, Arizona. Another of appellant's daughters approached him at the reception and told him that Tim Snodgrass, appellant's son, had just been attacked by a group of juveniles in the vicinity of the Wingfoot Market, which is also located in Chandler. The son suffered from hemophilia and was constantly in danger of serious injury or death from internal bleeding which could result from abrasions or contusions that would not ordinarily endanger the life of a person who does not suffer from that condition. Believing his son to be in imminent serious danger, appellant and his friends hurriedly left the reception and traveled to the Wingfoot Market parking area.

At approximately 9:15 p.m. Officer Irwin and auxiliary Officer Tate arrived at the Wingfoot Market in response to a radio report that a fight was in progress in the parking lot. Approximately thirty people were present when the officers arrived. An unknown number of additional uniformed officers also arrived and together the policemen commenced to quell the disturbance. One officer was nearly hit by a pickup truck driven by an individual who was subsequently arrested. Another, Officer Irwin, had his nose broken when struck by a fist. At least four men were arrested and charged as a result of the riot.

Officer Irwin had just arrested one defendant and, after placing him in a patrol car, was returning to the fray when he was confronted by appellant. He later described the scene as a "mob" and testified that appellant came toward him and called him an obscene name. Two policemen then grabbed appellant and backed him up against an automobile. Irwin further testified that appellant was wrestled to the ground at some time after he was seized by the officers, but the sequence of events is otherwise unclear. Appellant was handcuffed and placed in the back seat of a patrol car. There is no evidence that appellant attempted to or did strike any of the officers during the disturbance. Appellant's actions are characterized in Officer Irwin's words as follows:

> "I finished my job with Hobbs, put the cuffs on him [Hobbs], took him over to the patrol unit and put him in the back of the patrol unit, went back to assist the other officers. A Bill Don Snodgrass came at me, yelled something to the effect, I was f___ing punk.

Q. He said what?

A. That I was a f___ing punk. A couple of officers grabbed him.

*   *   *   *   *   *

A. We—I had placed Larry Hobbs in the back of the car. A couple of officers, Maxwell was one of them, were attempting to subdue and arrest Howard, the gentleman that struck me. Snodgrass was interfering with their arrest.

*   *   *   *   *   *

Q. Just to make it clear the obstruction that you are talking about Mr. Snodgrass interfering with your attempts with your duties was at the same time period and the same events he was also obstructing Officer Maxwell.

A. Yes it was."

## FACTUAL BASIS

■ The appellant in his brief before this Court did not raise the question of a factual basis in the record to support the finding of the court that he was guilty as charged in the *information*. However, the conviction cannot be sustained unless there is a factual basis to support each of the elements of the crime to which the plea is made. *State v. Norris*, 113 Ariz. 558, 558 P.2d 903 (1976); *State v. Carr*, 112 Ariz. 453, 543 P.2d 441 (1975), and we have therefore examined the sufficiency of the evidence in the extended record.

■ The factual basis requirement of 17 A.R.S., Rules of Criminal Procedure, Rule 17.3, demands that the record show substan-

tial evidence of the defendant's actual guilt. *State v. Norris*, supra; see also *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). This factual basis can be shown through the evidence adduced at the plea proceeding and/or through an examination of the extended record. *State v. Rodriguez*, 112 Ariz. 193, 540 P.2d 665 (1975); *State v. Mendiola*, 23 Ariz.App. 251, 532 P.2d 193 (1975), adopted and approved as the opinion of the Arizona Supreme Court, 112 Ariz. 165, 540 P.2d 131. However, a plea to the charge, an admission to the crime, or statements of conclusions of law do not establish a factual basis, simply because such statements are not facts from which the trial court can fulfill the requirements of Rule 17.3. See *State v. Rodriguez*, supra. *State v. Mendiola*, 23 Ariz.App. 251, 532 P.2d 193 (1975).

The problem is that appellant was charged with resisting Officer *Maxwell* and not Officer *Irwin*. Officer Maxwell did not testify at the preliminary hearing. The only facts present in the extended record which could arguably establish a factual basis of appellant's guilt of the crime of obstructing Officer Maxwell as alleged in the information is the testimony of Officer Irwin that appellant "was interfering" with Officer Maxwell's arrest of Mr. Howard, and the presentence report which read:

"suspects, Bill Snodgrass, Patsey Snodgrass [appellant's wife] and Bobby Howard [were] involved in altercations with other Chandler police officers," [and] "Bill Snodgrass was arrested for assault on a Police Officer, as he fought officers at the scene."

The same report contained appellant's denial that he had used any force:

"[In] attempting to check on his son's welfare [he] was sprayed with mace by police officers on the scene, grabbed, subdued and arrested. The defendant indicated he did nothing to provoke or cause his arrest."

█ Reluctantly we have concluded that the preliminary hearing transcript reflects insufficient evidence to establish and support the finding by the court of a factual basis for the charge. Nor do the unsupported statements in the presentence report, since Officer Maxwell was not one of the officers referred to, and the allegation was specifically denied by the appellant. The statement that the appellant was "interfering" with Officer Maxwell is not only a conclusion of law framed in the language of the statute without facts in the record to support it, it does not establish whether the "interference" was through words alone or was accompanied by the requisite offensive action. Cf. *State v. Rodriguez*, 112 Ariz. 193, 540 P.2d 665 (1975) wherein it was stated that a plea to the charge and an admission to the crime are statements of conclusions of law which do not establish a factual basis, because such statements are not facts upon which a trial court can fulfill the requirements of Rule 17.3. See also *State v. Reynolds*, 25 Ariz.App. 409, 544 P.2d 233 (1976).

█ We would also note, however, that while it is true that a defendant's remonstrations to a police officer by themselves are legally insufficient to establish the crime of obstructing an officer, *State v. Tages*, 10 Ariz.App. 127, 457 P.2d 289 (1969), the obscene epithet made by the appellant to Officer Irwin in the midst of mob violence against uniformed police officers and *while approaching the officer* is fully sufficient to constitute obstructing Officer Irwin, had the information so charged. While words alone under some circumstances might be inadequate unless accompanied by some offensive action such was not the case here as to Officer Irwin.

The facts simply do not support the charges filed. The insufficiency of the factual basis to support any of the operative phrases of the statute mandates that the no contest plea and the conviction thereon be set aside, *State v. Page*, 115 Ariz. 156, 564 P.2d 379 (No. 3709–PR, filed April 11, 1977); *State v. Norris*, supra; *State v. Mendiola*, 23 Ariz.App. 251, 532 P.2d 193 (1975).

█ We turn next to the challenged statute, § 13–541(A) A.R.S., in order to assist the trial court in the remand of the case.

"§ 13–541. Resisting, delaying, coercing or obstructing public officer; punishment

A person who attempts by means of any threat or violence to deter or prevent a public officer from performing any duty imposed upon the officer by law, or who wilfully resists, delays or obstructs a public officer in the discharge or attempt to discharge any duty of his office, or who knowingly resists by the use of force or violence the officer in the performance of his duty, where the punishment is not otherwise specifically prescribed, shall be punished by a fine not exceeding five thousand dollars and imprisonment in the state prison for not to exceed five years, or by imprisonment in the county jail for not to exceed one year."

The elements of A.R.S. § 13–541(A) cl. 2 have previously been delineated as follows: "(1) the wilful resisting, delaying, coercing or obstructing, (2) of a public officer, (3) in the discharge of his duty." *State v. Tinghitella,* 108 Ariz. 1, 4, 491 P.2d 834, 837 (1972); *State v. Fimbres,* 20 Ariz.App. 65, 66, 510 P.2d 64, 65 (1973).

### THE NO CONTEST PLEA

Appellant argues that since the information alleges three alternative courses of conduct in the disjunctive by which he could have offended A.R.S. § 13–541(A), and since the trial court did not specify which of the three appellant violated, his conviction must be reversed if all or any of the three are found to be vague or overbroad.

While this will be discussed *infra,* we note at the outset that alleging the charge in the disjunctive must constitute a *jurisdictional* defect, for the appellant to prevail in this argument, since a no contest plea to the charge waives all non-jurisdictional defenses. *State v. Arnsberg,* 27 Ariz.App. 205, 553 P.2d 238 (1976).

"If an information fails to state a public offense, even though defendant made no objection to the information at the time of entry of plea, said information is void and it is a question of fundamental error." *State v. Andrus,* 17 Ariz.App. 70,

71, 495 P.2d 510, 511 (1972). In the instant case the information does set forth the elements as delineated in *State v. Tinghitella,* supra, and *State v. Fimbres,* supra. The information also alleges a violation of A.R.S. § 13–541. Appellant, however, complains that it was not then nor is it now "sufficiently definite to apprise the defendant so that he [could] prepare his defense to the charge." *State v. Andrus,* supra at 71, 495 P.2d at 511. Appellant timely moved to dismiss the information, pursuant to 17 A.R.S. Rules of Criminal Procedure, Rule 16.7, or in the alternative, to make it more definite, or to require the State to elect one of the three provisions of the statute as its theory of prosecution. The trial court denied this motion. Whether appellant would have prevailed on appeal on this ground in the absence of his no contest plea (or of a guilty plea) is not presently before us. It is, however, clear that the trial court's denial is a nonjurisdictional issue on appeal. *Compare State v. Arnsberg,* supra (denial of suppression motion nonjurisdictional on appeal following no contest plea); *State v. Lerner,* 113 Ariz. 284, 551 P.2d 553 (1976) (denial of suppression motion nonjurisdictional following guilty plea); *see also, State v. Hagen,* 27 Ariz.App. 722, 558 P.2d 750 (1976) (denial of bill of particulars motion discretionary).

The information is not fatally defective as duplicitous solely because of the disjunctive phrasing of the charge. In addition, only one offense was alleged and appellant was well advised of it by virtue of the preliminary hearing. *See State v. Arce,* 6 Ariz.App. 241, 431 P.2d 681 (1967); *see also, United States v. Alsop,* 479 F.2d 65 (9th Cir. 1973); *United States v. Ansani,* 240 F.2d 16 (7th Cir. 1957) cert. denied, 353 U.S. 936, 77 S.Ct. 813, 1 L.Ed.2d 759.

### OVERBREADTH

Appellant argues that A.R.S. § 13–541(A) is overbroad in the following respects:

(1) that its language can encompass a virtually limitless range of conduct;

(2) that it has no guidelines or restrictive language to limit its arbitrary or capricious application;

(3) that it could encompass speech alone;

(4) that it does not require the officer to be in the lawful performance of his duty; and

(5) that it does not exclude from its provision actions taken in resistance to an unlawful arrest.

A.R.S. § 13–541(A) cl. 1 proscribes "threats". In order for words alone to constitute the offense it is necessary that they be:

"[S]poken under circumstances affording the officer reasonable ground to believe that he could not proceed with the arrest without incurring evident risk of serious injury. In other words, the circumstances must be such that an officer of ordinary courage, but reasonable prudence, would be justified in desisting from the attempt to make the arrest." *State v. Scott,* 123 La. 1085, 49 So. 715, 716 (1909), cited with approval in *State v. Tages,* supra, 10 Ariz.App. at 130 n. 3, 457 P.2d at 292 n. 3.

The "threat" must also be made in *"attempts by means of any threat or violence to deter or prevent a public officer from performing any duty imposed upon the officer by law."* (emphasis added.) An "attempt" is not established by words alone; there must be an accompanying overt act and specific intent, which must be shown by evidence other than the overt act itself. *Cf. State v. Vitale,* 23 Ariz.App. 37, 530 P.2d 394 (1975). Therefore the "threat" must be accompanied by (1) an overt act and (2) evidence of specific intent, to constitute a crime under A.R.S. § 13–541(A) cl. 1. *Cf. Colle v. State,* 85 Nev. 289, 454 P.2d 21 (1969).

A.R.S. § 13–541(A) cl. 1 prohibits the use of "violence" in attempting to deter the officer. "Violence" is the execution of physical force so as to injure or abuse the officer. *Abernathy v. Conroy,* 429 F.2d 1170 (4th Cir. 1970). Thus the (1) use of force and (2) a specific intent to injure constitute the use of violence in an attempt to deter the officer under A.R.S. § 13–541(A) cl. 1.

A.R.S. § 13–541(A) cl. 2 makes it a crime for one to willfully resist, delay or obstruct a public officer in the discharge or attempted discharge of any duty of his office. "Wilfullness" means "'a purpose or willingness to commit the act or make the omission referred to [but] does not require any intent to violate law, or injure another, or to acquire any advantage.' A.R.S. § 1–215(36)." *State v. Bell,* 113 Ariz. 279, 281, 551 P.2d 548, 550 (1976). It does, however, require that the defendant have knowledge that the person obstructed is a peace officer. *See State v. Tages,* supra.

The terms "resists, delays, or obstructs" do not specifically require the use of direct force or actual violence. "Resisting" has been interpreted as withstanding the force of effect of or the exertion of oneself to counteract or defeat, *Landry v. Daley,* 280 F.Supp. 938 (N.D.Ill.1968), and "obstructing" "has been defined in this context as meaning ' * * * to be or come in the way of,' and has been said to imply ' * * * some physical act or exertion,' *Landry v. Daley* [supra]" *State v. Tages,* supra, 10 Ariz.App. at 130, 457 P.2d at 292. Other jurisdictions have however held that these terms proscribe the passive, indirect or circuitous impeding of a police officer. *See, e. g., State v. Merrifield,* 180 Kan. 267, 303 P.2d 155 (1956); *In re Bacon,* 240 Cal. App.2d 34, 49 Cal.Rptr. 322 (1966); *City of Athens v. Bromall,* 20 Ohio App.2d 140, 252 N.E.2d 298 (1969).

If the terms "resists" or "obstructs" are interpreted not to require some physical act other than mere speech, then A.R.S. § 13–541(A) cl. 2 is overbroad as it is over-inclusive. For example, the refusal to give consent to police officers to enter one's home to search for a suspect might not fall within these terms, *see People v. Wetzel,* 11 Cal.3d 104, 113 Cal.Rptr. 32, 520 P.2d 416 (1974); *People v. Cressey,* 2 Cal.3d 836, 87 Cal.Rptr. 699, 471 P.2d 19 (1970), while the refusal to permit inspection under other

circumstances may be an offense. See *People v. Fidler,* 280 App.Div. 698, 117 N.Y.S.2d 313 (1952); *Commonwealth v. Rhone,* 174 Pa.Super. 166, 100 A.2d 147 (1953). While criticizing an officer while he is performing his duty is not an offense under this statute, *State v. Tages,* supra, a defendant's response of "No, for what?" when told he is under arrest may constitute "resisting." *See People v. Stevenson,* 31 N.Y.2d 108, 335 N.Y.S.2d 52, 286 N.E.2d 445 (1972). Apparently one does not "resist" or "obstruct" justice when he advises another of his constitutional rights in an orderly and peaceable manner while an officer is performing his duty, *see State v. Leigh,* 278 N.C. 243, 179 S.E.2d 708 (1971); *People v. Pilkington,* 199 Misc. 665, 103 N.Y.S.2d 64 (1951), but to persistently and repeatedly advise another not to furnish identification to the officer has been held unlawful. *See People v. Cooks,* 58 Cal.Rptr. 550 (Cal.App.1967).

The basic problem with designating speech as "passive, indirect or circuitous impeding" and constituting "resisting" or "obstructing" is that it artificially transforms speech into conduct. The resulting effect is that the citizen's statement, or failure to speak, see, e. g. *Williams v. State,* 253 Ark. 973, 490 S.W.2d 117 (1973), is in and of itself unlawful. It is not stretching the statute, under this interpretation, to anticipate a prosecution for a person's failure to make admissions that he erroneously perceives to be protected by the Fifth Amendment, or for his negligent tender of erroneous information to the patrolman, or based on his reluctance to divulge evidence that may implicate his family or friends.

■ It is clear that "one is not to be punished for nonprovocatively voicing his objection to what he obviously felt was a highly questionable detention by a police officer." *Norwell v. City of Cincinnati,* 414 U.S. 14, 16, 94 S.Ct. 187, 188, 38 L.Ed.2d 170 (1973). We are unaware of controlling authority that makes a declarant's statement of an unsworn falsehood or half-truth about his actions or omissions to the policeman an obstruction of justice under A.R.S. § 13–541(A) in this jurisdiction. *But see, State v. Fenster,* 2 Conn.Cir. 184, 199 A.2d 177 (1962); *State v. Sotteriou,* 132 N.J.Super. 403, 334 A.2d 47 (1975). It is difficult to believe that "resisting" or "obstructing" were intended by the Legislature to include these situations as such a construction would supplant the existing perjury statutes and destroy the protections they afford. See A.R.S. §§ 13–561, 13–562; *see also, Friedman v. United States,* 374 F.2d 363 (8th Cir. 1967). While our Legislature does have the authority to command the witness to answer before the grand jury or at trial, and can punish him for lying in a sworn statement or deposition, see A.R.S. § 13–561, we cannot interpret A.R.S. § 13–541(A) to include punishment for erroneous or false statements to a police officer. Our Legislature has clearly indicated that for communication to be criminal it must be (1) willful, and (2) uttered to obstruct, delay or prevent the *communication of information* or testimony relating to the violation of a criminal statute to a police officer, A.R.S. § 13–541.01(A), or be accompanied by an *act* that frustrates the apprehension, prosecution or conviction of *another person* for a felony. A.R.S. § 13–541.01(B). Clearly A.R.S. § 13–541.01 does not make criminal the false unsworn statements relating to one's own allegedly criminal conduct or his failure or refusal to divulge information regarding another, absent his sworn status as provided by A.R.S. §§ 13–561, 13–562.

■ Based on the foregoing we construe "resisting" or "obstructing" in the context of A.R.S. § 13–541(A) cl. 2 to save its constitutionality and accordingly must hold that they must necessarily include the presence of some physical act or exertion against the officer in order to constitute an offense. *Landry v. Daley,* supra; cf. *State v. Tages,* supra.

Our interpretation of "resists" and "obstruct" is determinative of the meaning of "delay" in A.R.S. § 13–541(A) cl. 2 insofar as speech alone is insufficient to establish "delay" so that there must also be present some physical act or exertion for the reasons previously stated.

A.R.S. § 13–541(A) cl. 3 makes it unlawful for one who "knowingly resist[s] by the use of force or violence the officer in the performance of his duty. . . ." "Knowingly" requires that the defendant have knowledge that the person obstructed is a police officer. See *State v. Tages,* supra. "Force or violence" is the execution of physical force so as to injure or abuse the officer. *Abernathy v. Conroy,* supra.

Our examination and interpretation of A.R.S. § 13–541(A) convinces us that the range of proscribed conduct is sufficiently limited to punish only illegal conduct. Similarly we are convinced that it does not allow for arbitrary or capricious application. As we have interpreted the statute, mere speech does not constitute an offense under the statute.

■■■ Appellant also argues that the statute is involved since it does not require the officer to be in the *lawful* performance of his duty. This requirement is implicit in the statute itself since if "duty" were construed to include an unlawful arrest, then that arrest would be an "unreasonable seizure" within the Fourth Amendment. *People v. Curtis,* 70 Cal.2d 347, 74 Cal.Rptr. 713, 450 P.2d 33 (1969). Since "one cannot be punished for failing to obey the command of an officer if that command is itself violative of the Constitution," *Wright v. Georgia,* 373 U.S. 284, 291–292, 83 S.Ct. 1240, 1245, 10 L.Ed.2d 349 (1963), then one cannot be convicted under A.R.S. § 13–541(A) if the policeman was not later found to have been in the lawful performance of his duty. *People v. Curtis,* supra.

■■■ Appellant also contends that the statute does not. exempt actions taken in resisting an unlawful arrest. This position is erroneous for the reasons previously noted. Additionally, the statute has previously been construed to permit an illegally arrested person to "resist the arrest, using such force as may be reasonably necessary, short of killing the arresting officer." *Dugan v. State,* 54 Ariz. 247, 250, 94 P.2d 873, 874

(1939); *Everett v. State,* 88 Ariz. 293, 296, 356 P.2d 394, 396 (1960); see also, *State v. Lamb,* 17 Ariz.App. 246, 497 P.2d 66 (1972); *State v. DeRoss,* 9 Ariz.App. 497, 454 P.2d 167 (1969); *State v. Robinson,* 6 Ariz.App. 424, 433 P.2d 75 (1967).[2]

## SELECTIVE ENFORCEMENT

■■■ Appellant argues that A.R.S. § 13–541(A) was arbitrarily and capriciously applied to him in the instant case. If a proper evidentiary showing is made establishing a reasonable doubt about the prosecutor's or police officers' purpose, relief is available on this basis. *Two Guys from Harrison—Allentown, Inc. v. McGinley,* 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961); *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *United States v. Steele,* 461 F.2d 1148 (9th Cir. 1972). However, the only evidence in the record supporting this claim is a statement in the presentence report indicating that the Chandler police officers interviewed "did seem more than casually interested in seeing the defendant punished for his involvement in this offense." The evidence presented is insufficient to establish a reasonable doubt that appellant has been subjected to unlawful selective prosecution. See *United States v. Falk,* 479 F.2d 616 (7th Cir. 1973).

## VAGUENESS

■■■ Appellant argues that the terms "resisting, delaying and obstructing" do not specify where impermissible conduct begins or ends. The appellant argues that the present statute, by its language, could cover virtually a limitless range of conduct, such as arguing about a ticket, threatening to hire a lawyer, refusing to sign a misdemeanor ticket.

A statute is void for vagueness where it " 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.' *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed.2d 989" *Papachristou v.*

---

**2.** This common law right to forcibly resist an unlawful arrest has recently been abrogated by the Revised Criminal Code. See, A.R.S. §§ 13–404B(2) and 13–2508 amended laws 1977.

**116**

*City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). Additionally, where a vague statute

" '[A]but[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone' than if the boundaries of the forbidden areas were clearly marked." (footnotes omitted). *Grayned v. City of Rockford,* 408 U.S. 104, 109, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972), quoting *Baggett v. Bullitt,* 377 U.S. 360, 372, 84 S.Ct. 1316, 1323, 12 L.Ed.2d 377 (1964), quoting *Cramp v. Board of Public Instruction,* 368 U.S. 278, 287, 82 S.Ct. 275, 281, 7 L.Ed.2d 285 (1961), and quoting *Speiser v. Randall,* 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958).

We have examined the statute in light of appellant's arguments and our preceding discussion of overbreadth. We find the statute as construed is not vague since a person of common intelligence can easily ascertain what acts are prohibited. See also, *Winters v. New York,* 333 U.S. 507, 514, 68 S.Ct. 665, 92 L.Ed. 840 (1948).

As noted, however, the insufficiency of the factual record to support the charge filed in the information necessitates that the judgment and sentence be set aside.

Remanded for further proceedings consistent with this opinion.

SCHROEDER, P. J., and EUBANK, J., concur.