TODD, J., Dissenting.
I concur in the majority’s conclusion that Officer Huizar was discharging a duty of his office in conducting the undercover operation. I am of the view, however, that appellant’s verbal warning to a third party before any obvious illegal activity had taken place was protected speech and therefore cannot constitute a violation of Penal Code section 148, subdivision (a).
The cases on which respondent relies, People v. Quiroga (1993) 16 Cal.App.4th 961 [20 Cal.Rptr.2d 446] and In re Andre P. (1991) 226 Cal.App.3d 1164 [277 Cal.Rptr. 363], are not on point. In Quiroga, the court specifically stated that no constitutionally protected speech was involved in determining that the defendant’s refusal to give his name at his booking after *Supp. 8 a valid arrest constituted a violation of Penal Code section 148, subdivision (a). (16 Cal.App.4th at p. 972.) As for Andre P., there was no issue whether Penal Code section 148, subdivision (a) applied to speech which allegedly interfered with an officer’s duty. The court held that the above section was not facially overbroad and was constitutional as applied to Andre P.
As there appears to be no California case directly on point, a review of decisions from other jurisdictions may be helpful in determining whether one can obstruct an undercover officer by giving a verbal warning to a third party. In State v. CLR (1985) 40 Wn.App. 839 [700 P.2d 1195], CLR was convicted by a juvenile court of obstructing a police officer. In that case, a police officer on undercover duty approached a woman standing on the street. After talking to the officer through the open window of the officer’s truck, the woman agreed to engage in an act of prostitution. CLR, who recognized the officer as a member of the vice squad, observed but could not hear the exchange. The woman walked around the truck and opened the passenger door, at which point CLR yelled, “ ‘he’s vice.’ ” At that point the woman closed the door and started to walk away from the truck. (Id., 700 P.2d at p. 1196.)
The reviewing court held there was insufficient evidence that the defendant knew “that a public servant [was] engaged in a discharge of official duties . . . .” (State v. CLR, supra, 700 P.2d at p. 1197.) The officer was working undercover, and the defendant “could not have known that a crime had been committed and that the officer would be proceeding to make an arrest . . . .” (Ibid.) The reviewing court also held there was insufficient evidence of “hindering, delaying, or obstructing . . . .” (Ibid.) Finally, the court there noted: “Courts have found that similar obstruction statutes do not apply where there was no obvious, contemporaneous, illegal activity when the warning was given.” (Ibid.)
Likewise, in State v. Jelliffe (1982) 5 Ohio Misc.2d 20 [449 N.E.2d 810], the defendant was attending a rock concert and recognized an individual in plainclothes as a police officer. “Defendant then told at least one other individual, evidently in the hearing of the officer, that the large person was a ‘cop.’ ” (Ibid.) The court found the defendant not guilty, based in part on the following reasoning: “[T]here is no allegation that defendant’s conduct actually prevented the arrest of any persons who were then violating the law. While it may have made detection of violations more difficult, it is equally possible that it may have inhibited the commission of crimes in the first place. Surely that is one goal of law enforcement.” (Id. at p. 811.)
In State v. Tages (1969) 10 Ariz.App. 127 [457 P.2d 289], two officers were advised there was a felony warrant outstanding for the arrest of Mr. *Supp. 9 Tages. The officers, dressed in plainclothes, saw Mr. Tages at a bar sitting next to his wife, the defendant. The defense witnesses testified that the defendant told her husband not to go with the officers until they produced a warrant for his arrest. The reviewing court stated: “[W]e think that speech which is non-threatening, and which is not accompanied by physical force, is punishable only when it is substantially equivalent to force, that is, when it is intended to and does incite an unlawful resistance by another to the discharge of official duty or when the speech itself by its very volume and intensity interferes substantially with the carrying out of an official duty. [Citations.]” (Id., 457 P.2d at p. 292, fns. omitted.)
In People v. Lopez (1978) 97 Misc.2d 124 [410 N.Y.S.2d 787], the defendant was charged with obstructing governmental administration. “On June 15, 1978, at 9:35 p.m., at the Kingsbridge Road (IND) subway platform southbound, the complaining officer, while in plainclothes and on anti-crime patrol, was recognized by the defendant. He promptly and repeatedly shouted his observation to the world by announcing the fact that the complainant was a police officer and warning those within hearing to refrain from doing anything wrong.” (Id., 410 N.Y.S.2d at p. 788.) The officer claimed “he then had a youth suspected of a graffiti offense under surveillance . . . .” (Ibid.) In dismissing the charge, the court stated: “In the case at bar the effect of the defendant’s disclosure did, perhaps, make it more difficult to perform plainclothes duty. The fact, alone, is a risk inherent in many other similar situations. . . .” (Ibid.)
In the present case, the warning occurred before any obvious illegal activity had taken place. In addition, as in State v. Jelliffe, supra, 449 N.E.2d 810, appellant’s warning may have prevented a crime from being committed. Furthermore, appellant’s speech was nonthreatening, was not accompanied by physical force, was not so loud or intense that it interfered with Officer Huizar’s duty, and did not incite an unlawful resistance by the suspect. As appellant notes, the suspect had no duty to continue to talk to the undercover officer.
Although appellant’s disclosure of the officer’s identity might make it more difficult for Officer Huizar to continue to perform plainclothes duty in that area, it is clear that at least one person in the area, appellant, already knew or suspected that Huizar was a police officer. An officer working undercover places himself in danger, and an inherent risk of this kind of duty is that the officer’s identity may be known or may become known.
The majority relies on Long v. Valentino (1989) 216 Cal.App.3d 1287 [265 Cal.Rptr. 96], and concludes that appellant’s statements were not *Supp. 10 merely speech but rather speech that resulted in physical interference with the officer’s ability to complete his investigation. This reasoning runs afoul of the First Amendment protection recognized in Houston v. Hill (1987) 482 U.S. 451, 461-463 [96 L.Ed.2d 398, 412-413, 107 S.Ct. 2502]: “[Contrary to the city’s contention, the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. ‘Speech is often provocative and challenging. . . . [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.’ [Citation.] In Lewis v. City of New Orleans, 415 U.S. 130 [39 L.Ed.2d 214, 94 S.Ct. 970] (1974), for example, the appellant was found to have yelled obscenities and threats at an officer who had asked appellant’s husband to produce his driver’s license. Appellant was convicted under a municipal ordinance that made it a crime ‘ “for any person wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police while in the actual performance of his duty.” ’ Id., at 132 .... We vacated the conviction and invalidated the ordinance as facially overbroad. Critical to our decision was the fact that the ordinance ‘punishe[d] only spoken words’ and was not limited in scope to fighting words that ‘ “by their very utterance inflict injury or tend to incite an immediate breach of the peace.” ’...[']□ The Houston ordinance is much more sweeping than the municipal ordinance struck down in Lewis. It is not limited to fighting words nor even to obscene or opprobrious language, but prohibits speech that ‘in any manner . . . interrupt[s]’ an officer. The Constitution does not allow such speech to be made a crime. The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.” (Fns. omitted.)
I am persuaded by the reasoning set forth above that the imposition of criminal sanctions for the words spoken here would violate appellant’s constitutional rights under the First Amendment of the federal Constitution as well as article I, section 2, subdivision (a) of the California Constitution. I would therefore reverse the conviction.